## Missouri, Kansas & Texas Railway Company et al. v. Ira W. Word.

### Decided May 30, 1908.

**1.—Carrier of Live Stock—Injury—Measure of Damage—Case Discussed.**

It is now well settled that no distinction in the rule for the measure of damages is made between cattle negligently injured in transportation to market for immediate sale, and those intended for grazing and later sale. In either case the actual loss to the shipper is the lessened value of his property at the time of arrival at destination that has been proximately caused by the negligence of the carrier. But in the case of those intended for grazing facts subsequent to the arrival of the injured cattle, such as slow, rapid or ultimate entire recovery, may be looked to in ascertaining what was the real condition and loss at the time of arrival. Gulf, C. & S. F. Ry. Co. v. Godair, 3 Texas Civ. App., 514, discussed.

**2.—Same—Injury to Stock Cattle—Evidence.**

For the purpose of enabling the jury to determine what was the real depreciation in value of stock cattle, or cattle not intended for immediate sale, by reason of bruises and other temporary injuries received during transportation, evidence is admissible as to the length of time it required for them to recover, and the ultimate effect of the injuries shown by the evidence. The exclusion of evidence to this effect in the present case held reversible error. Chief Justice Conner concurs in the general rule, but dissents as to the reversal in this case.

**3.—Practice on Appeal—Supplementing Statement of Facts.**

A statement of facts regularly agreed to and certified by the trial judge can not be supplemented, contradicted or modified on appeal by the stenographer's notes of the evidence taken on the trial, even though both parties admit the correctness of the notes and consent that they might be considered by the Appellate Court.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*Coke, Miller & Coke* and *Spoonts, Thompson & Barwise,* for appellants M. K. & T. Ry. Cos.

*Capps, Cantey, Hanger & Short,* for appellee.—The proper measure of damage as to cattle which were injured in the shipment, and were bruised, skinned and otherwise suffered damage, was, as submitted by the court, the difference in the market value at the time and place of destination in the condition in which they did arrive, and the market value of the cattle at such time and place in the condition in which they should have arrived, independent of whether such cattle were destined for the immediate market, or were to be put on pasture and later on the market. Missouri, K. & T. Ry. Co. of Texas v. Kyser & Sutherland, 87 S. W., 389 ;; Gulf, C. & S. F. Ry. Co. v. Stanley, 89 Texas, 42; Gulf, C. & S. F. Ry. Co. v. Hume Bros., 87 Texas, 211; New York, L. E. & W. Ry. Co. v. Estill, 147 U. S., 591; St. Louis S. W. Ry. Co. v. Hunt, 81 S. W., 322; Southern Kansas Ry. Co. of Texas v. J. W. Burgess Company, 90 S. W., 189.

The ruling of the court was correct for the reason that appellants propounded the inquiry to the witness as to the depreciation or damage to the cattle, judging from what he saw of the cattle at the time of their arrival, coupled with what he saw of their recovery afterwards, and did not confine the inquiry to the damage at the time and place of their destination or arrival, and, in addition, the witness had not qualified to answer the question propounded, and the same was in the nature of a conclusion, and the witness had not stated that he had seen the cattle before they were shipped, or while they were being shipped, and in addition the substance of the answer called for by the question was afterwards given by the witness McElroy. Texas & P. Ry. Co. v. Sherrod, 87 S. W., 363; Texas & P. Ry. Co. v. Murtishaw, 78 S. W., 953; Chicago, R. I. & T. Ry. Co. v. Long, 65 S. W., 882.

CONNER, Chief Justice.—This is an appeal by the two latter named appellants from a judgment in favor of the first named appellant, and for appellee in the sum of six thousand dollars as damages to shipments of about three thousand and sixty-eight head of cattle made in April, 1906, by appellees over the transportation lines named from Brady, Texas, over the Ft. Worth & Rio Grande Railway to Fort Worth, Texas, and from thence over the lines of the appellant railways to Denison and on to Antoyne, Indian Territory.

The negligence alleged and supported by the evidence consisted of unnecessary delays and of unnecessary rough handling between Fort Worth and Antoyne, which proximately resulted in the death of three

hundred and thirty-eight head of cattle and damage in a large amount to the remainder. It is agreed, among other necessary things, that the evidence shows that the cattle involved in the controversy were gathered and driven to Brady from a grazing district about one hundred and twenty-five miles distant, and that the cattle were what are termed "stock cattle," consisting mostly of cows intended for pasturage in the Indian Territory and subsequent sale. The evidence was conflicting on the issue made by the pleadings of whether the cattle were in reasonably fair shipping condition when placed on the cars at Brady. Appellee's testimony shows that the cattle were thin but in a reasonably fair shipping condition at the time of shipment, and that had the cattle been transported with reasonable care and without unnecessary delay, but a small percent of loss would have occurred. The testimony of appellants, however, tended to show that the cattle were more than ordinarily thin and weak, and that by reason of the long distance they had been driven and of their condition they were not reasonably fit for shipping, and that a considerable loss would naturally be expected in making a shipment of the kind. It is also admitted that the evidence on the issues of negligence was conflicting, it being admitted that it is sufficient to sustain a finding either way. It also appears that of the cattle shipped a large number were injured and damaged and about three hundred and sixty head died as the proximate result, as appellee's testimony tended to show, of the negligence charged. The market value of the cattle at Antoyne was from sixteen and one-half to seventeen and one-half dollars per head, and in the opinion of appellee's witnesses the market value of the cattle which arrived and did not die was depreciated from three and one-half to four and one-half dollars per head.

The court instructed the jury that if they should find from the evidence the necessary elements of plaintiff's recovery as set forth in the charge, they should "find for plaintiff the amount you believe would have been the market value" of the cattle that were killed upon arrival at Antoyne, and if the jury should find by reason of the negligent delay and excessive rough handling charged "the market value at Antoyne of the cattle reaching that destination alive at the time of their arrival, was depreciated, then you will find for the plaintiff for the amount of such depreciation, against the defendant or defendants so causing the same."

No contention is made by appellants that the measure of damages as to the cattle that were killed was incorrectly submitted. The contention pressed upon us in substance is that it appearing that the cattle were stock cattle not intended for immediate sale upon arrival at Antoyne, but intended for grazing and later sale, appellee's measure of damage as to the cattle arriving in an injured condition only, was not "depreciation in the market value of the cattle at the time of arrival, but the actual loss sustained," and the case of the Gulf, Colorado & Santa Fe Railway Company v. Godair, 3 Texas Civ. App., 514, by this court, is cited in support of the contention stated. The Godair case was one of a shipment of cattle from Colorado City, Texas, to Willow Springs in the Indian Territory, with negligence and injuries charged similar to those of this case. As we read the Godair case, however, it is not necessarily in conflict with the charge of the court now under consideration. On

the contrary, the general rule for measuring the damage as stated by the court in the case now before us was distinctly recognized in the Godair case. But it was stated that "there was evidence tending to show that the cattle upon their arrival at Willow Springs appeared to have sustained much greater injury than subsequently proved to have been the case; and, as appellee retained them until the real damage was ascertained, appellant contends that he should have been restricted to the actual loss he had sustained and not allowed to recover the amount that erroneously appeared to have been received when the cattle first arrived," and the court adopted the contention contained in the quotation. In this the court was doubtless correct under the facts of that case, but the opinion distinctly proceeds upon the theory that compensation for the actual loss is the great desideratum in applying the measure of damage in every case.

But whatever view may be taken of the Godair case, we think it now well settled by subsequent cases that no distinction in the rule for the measure of damages is made between cattle negligently injured in transportation shipped to market for immediate sale, and those intended for grazing and later sale. In either case the actual loss to the shipper is the lessened market value of his property at the time and place of arrival at destination that has been proximately caused by the negligence of the carrier. To hold otherwise is to adopt a less certain rule, and to give the carrier the benefit of the increased time and hazard involved in a recovery from the injuries. Of course, facts subsequent to the arrival of injured cattle, such as slow, rapid, or ultimate entire recovery, may be looked to in ascertaining what was the real condition and loss at the time of arrival, but, as stated, in every case the measure of shipper's damage is to be fixed as of the time of the arrival of the injured cattle at the point of destination. See Missouri, K. & T. Ry. Co. of Texas v. Kyser & Sutherland, 87 S. W., 389; Gulf, C. & S. F. Ry. Co. v. Stanley, 89 Texas, 42; Gulf, C. & S. F. Ry. Co. v. Hume Bros., 87 Texas, 211; New York, L. E. & W. Ry. Co. v. Estill, 147 U. S., 592; St. Louis S. W. Ry. Co. v. Hunt, 81 S. W., 322; Southern Kansas Ry. Co. of Texas v. J. W. Burgess Co., 90 S. W., 189.

A question with which we have had more difficulty, however, arises from the action of the court in excluding certain evidence. The appellants sought to show, in substance, that the bruises, injuries, and skinned places observed by the witness McElroy did not "affect the cattle with reference to their grazing, going on the grass and recuperating," and that when the witness saw the cattle in June they seemed to have fully recovered from injuries, and that they presented no evidence of injury at the time they were shipped out in October following. We are all of opinion that this evidence was admissible, not for the purpose of showing the market value of the cattle in October or at any time other than at the time and place of delivery, but as tending to show the real condition and loss at that time. Appellee, indeed, had the lawful right to sell his injured cattle immediately upon delivery in their injured condition, and would in that event have been entitled to recover the full amount of their depreciated value on the market as the facts then established it, but the cattle were not sold, and it often appears that sub-

sequent developments show that the real injuries at the time of arrival are greater or less than was apparent, and we think that for the purpose of determining what was the real injury and the real depreciation in value the jury were entitled to consider not only the condition and appearance of the cattle at the time, but the rapidity with which they recovered, if they did rapidly recover, and the ultimate effect of the skinned and bruised places shown by the evidence. This, we think, is the principle applied in the Godair case before cited, and the majority are of opinion that the error of the court in excluding the evidence indicated will require a reversal of the judgment, inasmuch as there is no statement of facts and the verdict fails to specify whether the damages allowed by the jury were wholly or partly because of the cattle killed, or wholly or partly because of injuries to them merely. The writer, however, inclines to a contrary view. The witness McElroy was permitted to state that in his opinion the injuries and bruises he saw upon them did not affect their market value, and a Texas jury would ordinarily know as matter of common knowledge that appellee's cattle did in fact apply themselves to grazing and ultimately recovered, it appearing in the agreed statement of the evidence that of the cattle now under consideration no bones were broken, horns knocked off, or greater injuries inflicted than bruises, skinned places, etc. This view seems to be given additional force from the fact that the verdict and judgment in appellee's favor for six thousand dollars is but forty dollars less than the lowest agreed value of the cattle that actually died during the transportation. The error of the court, therefore, would seem not sufficiently prejudicial to require a reversal. However, in accordance with the opinion of the majority, the judgment is reversed and the cause remanded for a new trial.

### ON MOTION FOR REHEARING.

Appellants have presented for consideration a copy of the stenographer's notes of the questions and answers of the witness McElroy on the trial below. The copy is duly certified and appellee admits its correctness and consents to its consideration. From this it would appear that substantially the evidence, because of the rejection of which the judgment below was reversed, was in fact before the jury. We are of the opinion, however, that the copy can not be considered. We know of no authority for so modifying, contradicting or supplementing the statement of facts regularly agreed to and approved by the trial judge as provided by the statute. But if we could do so, the force of the evidence must have been greatly weakened by the repeated rulings of the court excluding the testimony of the witness McElroy tending to show that the injuries visible upon the cattle after arrival at Antoyne were not such as to interrupt or impede their capacity and disposition to at once begin grazing and recuperate and their early entire recovery therefrom, and hence would seem most certainly to have required the submission of appellants' special charge No. 5, which was rejected by the court. This charge was to the effect that if the jury found that the cattle not killed were not intended for immediate sale, but to be grazed and shipped to market at a later period, and that if the jury found that said cattle while on the pasture did recuperate, "and that the real injuries to said

cattle, if any, were not so great as apparently seemed upon their arrival, then the jury should take such for a circumstance in determining what was the real depreciation of said cattle." This charge substantially embodies the rule applied in our original opinion. So that on the whole we think the motion for rehearing must be overruled.

*Reversed and remanded.*