MISSOURI, K. & T. RY. CO. OF TEXAS v. MULKEY & ALLEN et al.

(Court of Civil Appeals of Texas. Dallas. May 24, 1913. Rehearing Denied June 28, 1913.)

1. CARRIERS (§ 229*) — CARRIAGE OF LIVE STOCK—MEASURE OF DAMAGES.

Where a carrier knew the ultimate destination of a shipment of cattle, although it did not carry them the whole way, the measure of damages for negligent injuries is the difference between the market value of the cattle in the condition in which they should have arrived at their destination and the market value in the condition in which they actually arrived.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

2. CARRIERS (§ 230*) — INJURIES TO LIVE STOCK—MEASURE OF DAMAGES.

In an action for injuries to a shipment of cattle, an instruction that the measure of dam-

ages is the difference between their market value as they should have arrived and as they did arrive is erroneous, if there was no market value at the place of destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

3. CARRIERS (§ 228*) — CARRIAGE OF LIVE STOCK—MARKET VALUE.

In an action against a carrier for injuries to a shipment of cattle, evidence *held* to show that there was a market value for the animals at the place of destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

4. CARRIERS (§ 227*) — CARRIAGE OF LIVE STOCK — ACTIONS — PLEADINGS — SUFFICIENCY.

In an action against a carrier for injuries to a shipment of cattle, the petition need not aver the measure of damages, for the measure of damages is a rule of law governing the admission of testimony, and need not be pleaded in order for the petition to state a cause of action.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 232, 953–956; Dec. Dig. § 227.*]

5. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against a carrier for injuries to a shipment of cattle which were fed for some time after the injury, an instruction that there could be no recovery for any apparent damage to the cattle if they afterwards recovered from the condition in which they appeared upon arrival at destination is properly refused as on the weight of the evidence, because singling out part of the evidence tending to show no loss.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

6. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against a carrier for injuries to a shipment of live stock, a charge that one claim of negligence was that the cars were improperly bedded, and that if this fact was true it constituted negligence, is not upon the weight of the evidence, in that it detailed facts relied upon by the plaintiff, for a plaintiff is entitled to have the facts upon which he relies as showing negligence submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

7. CARRIERS (§ 228*) — CARRIAGE OF LIVE STOCK—ACTIONS—EVIDENCE.

In an action against a carrier for negligent injuries to a shipment of live stock, where it appeared that they were fed for three or four months after the shipment and then were put upon the market, evidence as to whether the owners received full market value for them is not admissible as tending to lessen the amount of damages, because not furnishing a correct basis for determining the injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

8. CARRIERS (§ 228*)—CROSS-EXAMINATION— COLLATERAL ISSUES.

Such testimony, although sought to be elicited on cross-examination of the plaintiff, should be excluded, because leading to collateral and speculative issues.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by Mulkey & Allen and others

against the Missouri, Kansas & Texas Railway Company of Texas and another. From a judgment for plaintiffs, the named defendant appeals. Affirmed.

Alexander S. Coke and Lawther & Pope, all of Dallas, for appellant. Wynne, Wynne & Gilmore, of Wills Point, H. C. Coke, of Dallas, Dashiell, Crumbaugh & Coon, of Terrell, and Woods & Morrow, of Kaufman, for appellees.

RASBURY, J. Appellees instituted this suit against appellant and the Texas Midland Railroad, alleging that on December 30, 1910, they delivered to appellant 440 steers for transportation over appellant's line of railroad from Roanoke to Greenville, Tex., there to be delivered to the Texas Midland Railroad for transportation on its line to Kaufman, appellant being informed at the time that the ultimate destination of the steers was Kaufman, and that they were being shipped to Kaufman to be fed and "finished" for the market; that prior to said time said steers had been on good pasture, with plenty of grass and water, and had been fed as well upon cold-pressed cotton seed cake since November 1, 1910, and were in fine condition for the purpose contemplated; that they were four, five, and six year olds, and when loaded into the cars were in like condition, except some that were injured in the process of loading, caused by a defective loading platform maintained by appellant; that appellant, Missouri, Kansas & Texas Railway Company of Texas was negligent in transporting said cattle, since it consumed 26½ hours in transporting said steers from Roanoke to Greenville, a distance of 100 miles, which was an unreasonable and unusual time, since the said distance could have been covered, by the exercise of ordinary care, in four hours, and which delay greatly damaged and injured said steers; that between said Roanoke and Greenville appellant negligently rammed and jammed its cars together, switched them about, knocking the steers down in the cars, throwing them against each other and the sides and ends of the cars, skinning, bruising, and injuring them to their great hurt and damage. Against the Texas Midland Railroad the same charges, in substance, were alleged, the delay on that road being that it consumed 6½ hours in going a distance of 45 miles, when it should have made the run in 2 hours. It was further alleged that when the steers reached Kaufman five were down in the car, two dead, three so badly injured that they died shortly thereafter, the value of which was alleged to be $60 per head; that nine of said steers subsequently died as a result of the injuries received while on the cars, which were of the value of $60 per head; that the balance of the shipment, to wit, 426 head, were damaged $10 per head. It was also alleged that the bedding in the cars furnished by appellant was insufficient in that rotten straw was used for that purpose, which, in connection with the further fact that the floors of the cars were muddy, rendered same slippery and caused the steers to fall, and rendered it difficult for them to arise from the floor after falling, which further contributed to their injury; and that appellant "assumed" the duty of bedding the cars, and did with the assistance of appellees do so. The Texas Midland Railroad answered by general demurrer and denial, and specially denied the acts of negligence charged. Appellant answered by the general demurrer, certain special exceptions, the general denial, and specially assumed risk, and many acts of contributory negligence, a specific enumeration of which is unnecessary, in view of the issues presented upon appeal. All acts of negligence charged by appellees were specifically denied, and it was affirmatively alleged that the shipment was expeditiously handled between the points on its line, and that it used due care in transporting the steers over its lines, and that its liability ceased when the steers were delivered to the Texas Midland Railroad at Greenville. It was further alleged that the cattle were not shipped to Kaufman, there to be sold on the market, or to be shipped therefrom immediately to another market to be sold, but for feeding purposes and later shipped to market, and were in fact held by appellees at Kaufman for a period of 130 days, and then shipped to market and sold, and that if any were injured, they had fully recovered from such injuries and were sold by appellees for as much as they would have otherwise sold for. Appellant also specially pleaded the contract under which the steers were transported, reference to which will be made in our findings of fact. Other matters of defense were pleaded, but we have not included them in our statement for the reason that no issue arises here upon such pleas, or because same were not supported by testimony. There was a jury verdict in favor of the Texas Midland Railroad, and in favor of appellees for $4,360 against appellant. Judgment was entered accordingly. The Missouri, Kansas & Texas Railroad Company of Texas has appealed.

The verdict of the jury warrants the following conclusions of fact: The steers in question were purchased by appellees from Marion Sansom about two months before they were shipped to Kaufman. Sansom bought the steers in Dimmit county, Tex., where they were grown; after purchasing them he shipped them to Concho county, where they remained until some time in October, when he removed them to Denton county; when purchased by appellees the steers were in what is known as the Reynolds pasture in Denton county, a pasture containing about 2,100 acres of land, and the grass and water in the pasture were good and the pasture was not overstocked; when Sansom sold to appellees

it was agreed and arranged that the steers should remain on pasture where they were until shipped to Kaufman, it being the intention of appellees to feed the cattle at Kaufman at the end of the pasturing period, and then ship them to market; the cattle when sold were strong and healthy and desirable as feeders; the steers were range raised, but not particularly wild, and eating their feed when sold; in addition to the grass afforded by the pasture the steers were fed cotton seed cake; the steers were five and six year olds, of average breed, healthy and safe for shipping and above the average weight for shippers; the steers were driven from pasture to Roanoke, and on December 30, 1910, were loaded in the cars at 3 o'clock p. m.; before and at the time the steers were loaded for shipment appellant knew that the ultimate destination of the cattle was Kaufman, although by their contract of carriage they were to haul the cattle only to Greenville, where by the contract of carriage appellant's liability ceased, and where the Texas Midland Railroad took charge of the shipment on to Kaufman; the cars furnished had no bedding except that some of them had two or three bales of old wheat or oat straw; that some of them had dry dirt in them, and some of them a mixture of mulch and slush; that additional bedding was asked for, and the agent furnished some that was inferior for bedding purposes; that the bedding for the cars was insufficient for the shipment of the cattle; that the steers left Roanoke over appellant's line at 3 o'clock p. m. December 30, 1910, and arrived at Greenville at 5:15 p. m. the following evening; that between Roanoke and Greenville the steers were roughly handled, and unnecessarily rammed and jammed in the cars, but we will not attempt to recite the particulars as testified to by the witnesses; that on arrival at Greenville the steers were delivered to the Texas Midland Railroad, the latter road delivering the steers at Kaufman at 12 o'clock of the same day. The cattle upon arrival at Kaufman appeared in poor condition; that two were dead at the time of the delivery; after unloading, 12 more head subsequently died; the remaining were damaged to the extent as found by the jury; that the herd were put in pens at Kaufman, and after feeding them for 100 or 120 days they were shipped to Ft. Worth, Kansas City, and St. Louis markets and sold.

[1] The court charged the jury at trial, in substance, that the measure of damages, if any, to be awarded appellees was the difference between the market value of the cattle in the condition in which they would have arrived at their destination, but for the negligence of the defendant, and their market value in the condition in which, by reason of the negligence, they did arrive at their destination. Appellant does not deny the well-settled rule, as stated by the trial court, but contends it has no application in the in-

stant case, for the reason that by the terms of the contract of carriage between appellant and appellee, appellant only agreed to transport the catte to Greenville, where its duty ended, and not to Kaufman, their ultimate destination. The rule in this state is that, although the contract of one of several carriers is to transport a shipment to a point short of its ultimate destination, such carrier, in case of negligence, is nevertheless within the rule stated, since, having knowledge of the ultimate destination, the presumption arises that its contract contemplated that the measure of damages would be controlled by the market value at the ultimate destination of the shipment. As stated in our conclusions of facts, the jury found that the appellant knew the destination of the cattle was Kaufman, and, the evidence being sufficient to support the finding, there was no error in the court's charge. Railway Co. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 767, and cases cited; Railway Co. v. Lumbley, 56 Tex. Civ. App. 418, 120 S. W. 1050.

[2] It is next contended by appellant that the rule for the measure of damages as stated by the trial judge was erroneous, for the reason that the evidence failed to disclose that cattle of like character and quality had been bought and sold in Kaufman often enough and in sufficient quantity to establish a market value for them there. The rule is correctly stated; and, if there is no testimony in the record showing a market value for the cattle at Kaufman, the charge is erroneous. Railway Co. v. Crowder, 152 S. W. 183, and cases cited. Hence under this contention the issue narrows to ascertaining whether the cattle in fact had a market value in Kaufman.

[3] The witness J. F. Mulkey, after qualifying as an expert and experienced dealer in cattle, testified that there was a market value for steers of the kind shipped, and that such cattle had frequently been bought and sold in Kaufman, and that there was a fixed market value of same, and on cross-examination stated that South Texas cattle similar to those sued on had been sold on the market in Kaufman, but not during the year 1910. The witness A. J. Morrow testified, among other things, that cattle are bought and sold and judged with reference to their size and as to how they will "finish" as "feeders," without regard to their origin, whether from north, south, east, or west. A number of other witnesses corroborated Mulkey as to there being a market value in Kaufman for similar cattle, and all the witnesses fixed a market value upon the cattle which supports the judgment, and which we do not review, since the point made by appellant is that the evidence, as adduced, is not in reference to South Texas cattle. It occurs to us that the rule stated by the witness Morrow is correct, and that, merely because the cattle were from a particular section of the state, it could not

necessarily be inferred that they do not come within the rule that they were of like quality and character with other cattle sold in the market. As explained by said witness, the better rule would seem to be to judge the cattle, not by the section from which they come, but with reference to their size, weight, condition, etc., and how they will probably "finish" as "feeders."

[4] The next claim is that the charge upon the measure of damages was further erroneous because the petition did not, in terms, allege the rule to be as stated by the court, and hence not authorized by the pleading. The substance of the pleading on the issue raised is that those of the cattle that died were of the value stated, and that the others were damaged as stated. It is true the pleading nowhere alleges that the damage claimed is the difference between the market value of the cattle in the condition in which they would have arrived, but for the negligence of the appellant, and their market value in the condition in which, by reason of such negligence, they did arrive. But this, in our opinion, is immaterial. The measure of damages, being a rule of law governing the admission of testimony, has no necessary place in the petition. To the rule the evidence must conform, and by it the jury be guided under instructions from the court; but, in stating a good cause of action, it is only necessary to relate facts which under the rule would entitle the case to go to the jury. Railway Co. v. Jenkins, 89 S. W. 1106; Railway Co. v. Smith, 19 Tex. Civ. App. 114, 47 S. W. 278.

[5] By its third assignment of error appellant complains of the refusal of the trial judge to tell the jury that appellees could not recover for any "apparent" damage to the cattle, and that if the injured cattle afterwards recovered from the condition in which they appeared upon arrival at Kaufman, they might consider such facts in arriving at the actual damage to the cattle. The court below correctly charged the jury on the measure of damages, and permitted the broadest kind of inquiry into the condition of the cattle at the time of their shipment, at the time of their arrival, as well as their condition and improvement while being fed and before they were sold. As we understand it, these are inquiries going to prove or disprove the actual damage, and may be, and doubtless were, considered by the jury in the instant case; but we do not understand that proof of such matters is authority for the court to suggest to the jury in his charge that such facts have been proven and may be considered by the jury in estimating the actual loss. Their admission in evidence is the warrant for their consideration, but the court may not single out that particular fact, and especially direct the attention of the jury to the fact that that particular testimony may be considered. The rule is that the actual loss is recoverable; and what

the actual loss is, is a question to be determined by the jury from all the facts taken and considered as a whole, without special reliance on any particular fact or circumstance. Railway Co. v. Word, 51 Tex. Civ. App. 206, 111 S. W. 753.

[6] The court below, in presenting appellees' theory of the alleged negligent acts of appellant, directed the jury's attention to the fact that one claim of negligence was that the cars furnished were improperly bedded, and instructed the jury that if that fact and the other facts also pleaded by appellees were, in their opinion, true, it would constitute negligence. Appellant contends such charge gives undue prominence to the testimony offered in support of the allegation. We think not. Instructions are not upon the weight of the evidence, because they detail the facts pertaining to a theory of recovery relied upon by the plaintiff, since plaintiff is entitled to have his case presented to the jury in connection with the very facts on which he relies to support it. Railway Co. v. Ruckman, 49 Tex. Civ. App. 25, 107 S. W. 1158. This rule in no sense conflicts with what we have just said in our last paragraph. In the one case there is a singling out of special proven facts, while in the other there is the recital of a set of facts which it is alleged constitute in law negligence.

[7] Upon trial of the case, while Fletcher Mulkey, one of the appellees, was testifying in his own behalf, appellant offered to show by said witness that when he sold the cattle on the market he got the full market value therefor, and for that purpose asked the witness the following question: "When you sold these cattle in April or March, did you get full market value for them?" Upon objection by appellees the witness was not permitted to answer the question. Appellant, by its seventh assignment of error, asserts that the action of the court was error, and contends the testimony was admissible as bearing upon the question of the character of the injuries complained of. The injuries to the cattle occurred three or four months before they were sold; and, in passing upon the precise question, Mr. Justice Rice, in Missouri, Kansas & Texas Railway Co. of Texas v. Golson, 133 S. W. 456, after stating the general rule, says: "But we fail to perceive how the abstract statement as to what a part of said cattle may have sold for three or four months thereafter at a distant market could have any tendency toward proving their condition or value at the time of their arrival at Nelagony." See, also, to the same effect, Railway Co. v. Roberts et al., 126 S. W. 890. Mr. Chief Justice Brown, of the Supreme Court, in passing upon the same point, indicates that the admissibility of such an inquiry depends upon how far removed the time of the sale is from the time of the injury. He says such proof is not admissible to establish as the measure of damages the

market value of the cattle at the place where sold as the criterion by which to determine the amount of recovery, but because it is permissible on cross-examination to ascertain the price at which the cattle were sold, since such testimony would tend to show that plaintiff's opinion of the amount which the cattle had declined in value was not correct, and thus impeach the reliability of his judgment in making estimates of the damage sustained. Houston Oil Co. v. Trammell, 96 Tex. 598, 74 S. W. 899. In that case the cattle were sold within 50 or 60 days after receiving their injuries, and it would seem that the price for which they may have sold so soon after their injuries would tend strongly either to affirm or disprove plaintiff's opinion as to the amount of the damages. In the instant case, however, the cattle were not sold until either three or four months after they received their injuries, and the price at which they were then sold could hardly be said to furnish a correct basis for determining the reliability of the opinion of those who saw them at the time of such injuries. Within the four months, with proper care and food, it is conceivable that the cattle not only could have entirely recovered from their injuries, but have gotten in a condition much superior to that before the injuries, and could command, in the market, a price in excess of what they would have commanded if they had never received any injuries.

[8] Further, and as affording a better reason for rejecting the testimony, it may be said that such an inquiry at so remote a date would open a field of inquiry so widely speculative as to in effect destroy the rule itself.

The fourth, fifth, eighth, ninth, and eleventh assignments of error have been carefully considered, and those that are not disposed of in other portions of this opinion are overruled, because they do not, in our opinion, present matter showing reversible error.

The judgment is affirmed.