CHICAGO, R. I. & G. RY. CO. v. PAVILLARD. (No. 8402.)

(Court of Civil Appeals of Texas. Ft. Worth. June 17, 1916.)

1. CARRIERS ☞212, 218(6) — LIVE STOCK — CARE—CONSTRUCTION OF CONTRACT.

A shipping contract, providing that the shipper should take care of the stock and should unload it and should save the carrier harmless except as to damages resulting from the carrier's negligence, did not on its face exempt the carrier from damages which might result from its negligence, contrary to statute, and, when it found that the shipper was not at destination to unload his stock, it was bound to exercise at least ordinary care to preserve it from injury until he could be notified of its arrival, and if, under all the circumstances, ordinary care would have required that it be unloaded, the carrier's failure to do so would be negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 918, 919, 940–945, 949; Dec. Dig. ☞212, 218(6).]

2. CARRIERS ☞230(1)—LIVE STOCK—QUESTION FOR JURY—CARE OF STOCK.

In an action for damages to a shipment of live stock resulting from the carrier's failure to unload it or to notify the shipper of its arrival so that he might unload it, held, that whether the shipper, in the exercise of ordinary care, should have been present to receive and unload it, was for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962; Dec. Dig. ☞230(1).]

3. CARRIERS ☞217(1)—LIVE STOCK—RECOVERY FOR INJURY — CONTRIBUTORY NEGLIGENCE.

Where a shipper of live stock was negligent in failing to unload it on arrival so that it was injured, he could not recover for such injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 931; Dec. Dig. ☞217(1).]

4. EVIDENCE ☞67(1) — PRESUMPTION — CONTINUANCE OF CUSTOM.

Ordinarily, a custom once shown to exist is, in the absence of testimony showing its abrogation, presumed to continue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 87; Dec. Dig. ☞67(1).]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

5. CUSTOMS AND USAGES ⊂⇒17—PAROL EVIDENCE—CONTRACT FOR CARRIAGE OF LIVE STOCK.

In an action for damages to a shipment of live stock by the carrier's failure to unload it on arrival, evidence of a former custom to unload stock shipped to that point when unaccompanied by caretakers was incompetent to abrogate the express terms of a shipping contract requiring the shipper to unload it, if the shipper upon a sufficient consideration executed such contract.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 34; Dec. Dig. ⊂⇒17; Evidence, Cent. Dig. § 1951.]

6. CARRIERS ⊂⇒228(3)—LIVE STOCK—NEGLIGENCE—EVIDENCE.

Such testimony was also incompetent as against the defendant on the issue of its negligence in failing to unload the stock on arrival, where the issue was as to what, under all the circumstances of the shipment, was required of the carrier in the exercise of due care.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ⊂⇒228(3).]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by Sam Pavillard against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded.

Lassiter, Harrison & Rowland, of Ft. Worth, and McMurray & Gettys, of Decatur, for appellant. M. W. Burch and R. E. Carswell, both of Decatur, for appellee.

CONNER, C. J. This suit was instituted by the appellee in the district court to recover damages in the sum of $916, on account of alleged injuries to a shipment of 50 steers from Ft. Worth to Boyd, Tex. It was alleged that, when said cattle reached Boyd, the defendant railway company failed to unload them into its stock pens, and failed to notify plaintiff of their arrival, so as to enable him to unload them; that the delay in unloading them at Boyd caused them to become restless and fight each other and injure themselves; and that a hole was broken through the floor of one of the cars, and some of the animals got their legs through this hole, and thus injured themselves. The defendant denied the allegations of negligence, and averred that it handled the shipment under the usual printed shipping contract, which bound the shipper to load and unload the cattle.; that it transported the cattle promptly and without injury; that it expected the plaintiff to unload them at Boyd, as he had contracted to do; and that therefore he (the plaintiff), and not the defendant, was responsible for the delay and consequent injuries. The defendant further alleged that the cattle were infected with disease, and that whatever injuries they suffered during the time of. the shipment, or subsequently thereto, were the result of such disease, or of the inherent vice in the cattle. The case was tried on July 5, 1915, and judgment rendered in favor of the plaintiff for the sum of $400, from which the defendant has duly appealed.

In substance, the evidence shows that the plaintiff, assisted by one Plaxico, purchased the cattle in controversy in Ft. Worth from the Witherspoon-McMullen Commission Company; that the commission company obtained the shipping contract and billing from the railway company, and gave them to Plaxico; that the plaintiff, himself, was not in Ft. Worth when the cattle were shipped, having left for his home at 5 o'clock in the afternoon of the day, or night rather, upon which the cattle were shipped. The plaintiff, at the time he left Ft. Worth, expected the cattle to be shipped out upon a local freight which customarily arrived at Boyd at about 10 o'clock a. m., but instructions were given by Plaxico, or the commission company, for the cattle to be shipped out on the first train, and it so happened that an extra, or special, train started out at 2:30 a. m., which was the first train upon which the cattle could have been shipped, and that this train arrived at Boyd at 4:30 o'clock a. m.; that Boyd was a night station and customarily closed during the night until 7:30 o'clock a. m., which was the regular time for the agent to resume his duties. On the night in question, it seems that the cattle arrived at Boyd at 4:30 o'clock a. m. of the morning upon which they had been shipped out of Ft. Worth; that neither the railway agent or other person was present to unload them, and they were permitted to remain in the cars and standing on the side track until, as the agent says, 8:20 the next morning, or, as a Mr. Baker, who testified in behalf of the plaintiff, says, 9 or 10 o'clock a. m. The plaintiff's evidence further showed that on the morning of the cattle's arrival he phoned to said Baker to assist him in unloading the cattle, which, as already stated, he did not expect to arrive until about 10 o'clock. However, when Baker on his arrival at the station found the cattle there, he, with others, unloaded them, and the plaintiff's testimony tends to show that they were then very restless, had trampled one another, were bruised, some with their legs skinned by stepping into a hole in the bottom of one of the cars, and that on the same day the cattle were unloaded two of them died, and later four others also died. There is no evidence, other than as is possibly to be inferred from their condition, that the cattle were improperly handled or injured during the transportation between Ft. Worth and Boyd.

[1] Appellant assigns error to the refusal of the court to give a special instruction peremptorily charging the jury that it was the duty of the plaintiff, Pavillard, to unload his cattle upon their arrival at Boyd, and not to find anything against the defendant railway company on account of any failure on its part to so unload the cattle. This

requested instruction is based upon appellant's insistence that a provision of the shipping contract was controlling. It appeared that this shipping or stock contract, after its execution, was delivered to Plaxico, who forwarded it to the plaintiff, but it was not received by the plaintiff until some time after the arrival and unloading of the cattle at Boyd. The contract provided, among other things not necessary to notice, that:

"In consideration of free passage for caretakers, as hereinafter stated, and other privileges herein granted, it is mutually agreed between the parties hereto * * * that said shipper (Pavillard), at his own risk and expense, is to take care of, feed, water, and attend the said stock while the same may be in the stock yards of the carrier, or elsewhere, awaiting shipment, and while the same is being loaded, transported, unloaded and reloaded, and to load, unload and reload the same at sending and transfer points, and whenever the same may be unloaded and reloaded for any purpose whatever, and hereby covenants and agrees to hold said carrier harmless on account of any loss or damage to the said stock while being so in his charge and so cared for and attended to by him, or his agents or employés, as aforesaid, except such damages as may result from the negligence of the carrier."

The plaintiff had pleaded, among other things, that this contract, which was set forth in the defendant's answer, was without consideration, and void; but this issue was not submitted to the jury, the court in his charge assuming, in effect, that the carrier would be liable for the consequences of any negligence on its part in a failure to unload the cattle, and as it seems to us this view is correct. In fact, neither the plaintiff nor any one for him accompanied the shipment, and the billing had indorsed upon its face that no caretaker was in charge. So that it may be gravely doubted whether the provision of the contract pleaded was in any event in contemplation of the parties as an operative provision; but, whether so or not, the provision on its face did not exempt appellant from damages that might result from its own negligence, as indeed under our statute could not be legally done, and, even though it be assumed that the appellee contracted to unload his cattle at Boyd, it was nevertheless the duty of the carrier, when it found that the plaintiff was not there to receive his cattle and to unload them, to exercise at least ordinary care to preserve them from injury until the plaintiff could be notified of their arrival, and if, under all of the circumstances, ordinary care would have required the unloading of the cattle, the failure to do so would constitute negligence for the proximate results of which appellant would be liable under the law. True, the plaintiff himself may or may not have been guilty of negligence in his failure to be present and unload the cattle, and that such negligence contributed to the damages, in part at least; but that question relates to the defendant's plea of contributory negligence, which is an altogether different issue from the issue of appellant's negligence.

[2, 3] We think the court, however, did err, as presented in appellant's ninth assignment, in refusing to give to the jury the following specially requested instruction, viz.:

"Gentlemen of the jury, if you believe from the evidence that the plaintiff was negligent in failing to appear and unload or take his said cattle promptly away from defendant's depot, and that the said cattle were thereby injured or damaged, you are instructed that the plaintiff cannot recover for any such injury or damage so occasioned, and you will not assess any such damage so occasioned, if any, against the defendant."

As it seems to us, the evidence raised this issue. Plaintiff's agent, Plaxico, ordered the cattle to go out on the first train leaving Ft. Worth, and they went out on that train at an hour, which in the ordinary course of transportation would bring them into Boyd at 4:30 o'clock of the same morning. The evidence tended to show that plaintiff lived near Boyd, and must have known that it was a night station, and that in following its usual course of business the appellant company would have no one there to receive the cattle. No evidence is pointed out that Plaxico, plaintiff's shipping agent, or the commission company, either did or did not notify the plaintiff, or the night agent of appellant at Boyd, of the hour of shipment. So that, as stated, we think it should have been left for the jury to determine whether, under all of the circumstances, plaintiff, in the exercise of ordinary care, should have been present to receive and unload his cattle. The issue was not otherwise submitted, and because of the court's failure in this respect we think the judgment must be reversed.

[4-6] We should, perhaps, in view of the reversal, notice some other questions not sufficiently disposed of in what we have already said. The plaintiff offered the testimony of one McGonigal, to the effect that it was the custom of the defendant company, while he was acting as its agent, from about the year 1906 until and during the year 1912, to unload cattle shipped to Boyd when unaccompanied by caretakers. The court received this testimony over the objection of the defendant that it was immaterial, incompetent, and that the testimony did not cover the period in question, which was in 1915, some two years after McGonigal ceased to be the agent at Boyd. It may be doubted whether the practice indicated by the witness can properly be designated as a "custom," in the sense in which it is ordinarily used in treating that subject. It seems more in the nature of a simple practice or regulation on appellant's part of doing business at Boyd during the period covered by the testimony of the witness. Ordinarily, a custom once shown to exist is, in the absence of testimony showing its abrogation, presumed to continue. 1 Jones on Evidence, § 58e, p. 288; 9 Encyc. of Evidence, p. 915. Appellee's insistence, therefore, that the objection that the testimony did not cover the period in controversy, goes rather to the weight of the testimony

than to its admissibility, seems well grounded. The testimony, however, was incompetent to abrogate the express terms of a contract to otherwise do, if in fact the plaintiff, upon a sufficient consideration, executed an operative contract to unload his cattle. It was likewise incompetent as against appellant on the issue of its negligence in a failure to unload the cattle at Boyd. In this respect the issue was not what had theretofore been the practice of appellant, but what, under all of the circumstances of the present shipment was required of appellant in the exercise of ordinary care. Possibly the testimony was admissible on the issue of plaintiff's contributory negligence, if any, though we need not determine this question, as the point has neither been presented nor argued.

The testimony of the plaintiff complained of in appellant's second and third assignments of error relating to the extent of the damages done to his cattle seems to us to be fairly within the rulings made in the cases of Railway Co. v. Eastin & Knox, 39 Tex. Civ. App. 579, 88 S. W. 530; C. R. I. & G. Ry. Co. v. Halsell, 35 Tex. Civ. App. 126, 80 S. W. 140; M., K. & T. Ry. Co. v. Cauble, 174 S. W. 880; M., K. & T. Ry. Co. v. Word, 51 Tex. Civ. App. 206, 111 S. W. 753. At least under the circumstances shown and under the court's charge, no reversible error in this respect is shown.

No other question is presented that we deem it necessary to notice; but the judgment will be reversed, and the cause remanded, for the error noted.