**BORING v. CHICAGO, R. I. & P. R. CO.**
No. 14911.

Court of Civil Appeals of Texas.
Fort Worth.
Jan. 23, 1948.

Rehearing Denied Feb. 20, 1948.

Charles A. Stewart, of Fort Worth, for appellant.

Thompson, Walker, Smith & Shannon and Thomas H. Law, all of Fort Worth, for appellee.

HALL, Justice. ·

Appellant, H. G. Boring, assignee of Charles Salzer, sued appellee, The Chicago, Rock Island & Pacific Railway Company, in the County Court of Tarrant County, Texas, for damages to a shipment of hogs in interstate commerce from Kansas City, Missouri, to Irving, Texas.

The trial was to a jury and from their findings upon special issues the court rendered judgment against the contention of the appellant and in favor of appellee, from such adverse judgment the appellant appealed by assigning eight points of error.

Point No. 1 is as follows: "The Court should not have admitted testimony of defendant's witness, Richard Watt, to the effect that the responsibility of carrier ceases upon delivery of car at the usual place of delivery at station to which it is consigned."

This testimony was adduced from appellee's witness, over the objection of appellant, after the introduction of item 26385, Consolidated Freight Classification No. 16, page 309, R. C. Fife's I.C.C. No. 92, as follows: "In receiving livestock of any description for transportation, not in boxes, crates or cages, the actual delivery to the carrier does not commence until the stock has been placed in the car, and the responsibility of carrier ceases upon delivery at station to which it is consigned. The owner, or his agent, is responsible for loading and unloading livestock, not in boxes, crates or cages, carrier assuming no liability whatever in regard to such loading and

unloading; any assistance which may be rendered by an employee of carrier in loading and unloading shall be construed as purely voluntary, and any such employee while so engaged, shall be considered the agent of the owner and not the carrier."

Appellant's main contention is that appellee is not relieved as a carrier of its liability under the law to deliver shipment of livestock until the allowance of a reasonable time has passed for the removal by consignee and that such items above would place a greater burden upon the shipper than the law provides, in that the law does give the shipper a reasonable time after the livestock reach their destination to remove the same, and that during such time the carrier is liable for any damages that might happen to said livestock.

Upon the subject of "delivery" the court charged the jury as follows: " 'Delivery', as that term is used in this charge, means delivery at the place agreed upon and upon a track ready for unloading with a reasonable time being allowed to consignee to commence unloading."

Appellant's point No. 2, "The court should not have submitted to the jury, special issue No. 9, on the question of whether the hogs sustained damage other than that normally resulting from shipments of this nature, at the time they were delivered at Irving, Texas; that is to say, at or about 4:25 p. m. on August 31, 1945"; point No. 6, "The verdict is contrary to the evidence wherein in special issue No. 5, it is found that none of the hogs were dead when delivered to consignee at Irving, Texas"; point No. 7, "The verdict is contrary to the evidence wherein in special issue No. 6, it is found that there was no difference in the value of the dead or injured hogs upon their delivery at Irving, Texas, in their dead and injured condition and what their value would have been if they had been delivered in good condition"; and point No. 8, "The verdict is conflicting wherein in special issue No. 5, it is found that none of the hogs were dead when delivered to consignee at Irving, Texas, and in special issue No. 18, it is found that the failure of consignee to unload hogs earlier was the proximate cause of the injury to said hogs" are

based upon the same proposition as set out in point No. 1 and will be discussed in connection therewith.

The jury found in answer to issues the following against the contention of appellant:

Issue No. 2—appellee Railway Company did not fail to water hogs after their arrival at destination.

Issue No. 5—that none of the hogs were dead when delivered to consignee at destination.

Issue No. 6—that there was no difference between the value of the hogs in the condition in which they were delivered than in the condition appellant claimed they were in when delivered.

Issue No. 7—that the death or injury to the hogs was not due to negligence of the appellee.

Issue No. 9—that the hogs did not suffer damages above normal damage resulting from such shipment.

Issue No. 10—that shipment was not an overload.

Issue No. 16—appellee's agent informed appellant about 2 p. m. that the hogs would arrive about 5 p. m. the same day.

Issue No. 17—appellant was negligent in not unloading or taking care of the hogs sooner than he did.

Issue No. 18—the jury found that such failure to care for the hogs on the part of appellant was a proximate cause of the injury which the hogs received.

There were no issues submitted to the jury relative to the treatment and/or delay of the hogs in transit, etc. Assuming that appellant is correct in his contention that the Railroad Company was responsible for the safe-keeping of the hogs until a reasonable time had passed before it became released from such liability, we find the facts in this case under the jury's findings and judgment of the court are ample to relieve the carrier from such liability.

The record reflects testimony that the appellant had shipped these hogs from Kansas City, Missouri, to a destination known as Bastrop, Texas; that he later diverted such shipment to the consignee Salzer at Irving, Texas. Salzer testified in behalf of appellant that he went to appellee's agent at Irving trying to locate the hogs on August 31, 1945, evidently neither he nor appellant was expecting arrival of the hogs before that date; by the agent he was informed the hogs would arrive about 2 p. m.; that he went back at 2 but the hogs were not delivered then; that he went on about his business of gathering food for the hogs on a route in Dallas, Texas, and he did not stop that night about 10 while returning to see whether the hogs had arrived. He further testified there were 103 hogs in the shipment of one car but they were not overcrowded and had plenty of room for them to move around in. The testimony shows that neither Salzer nor appellant knew the agent; they also knew that the car was marked in substance, under Federal Government Regulations, not to be unloaded but to be fed and watered in the car.

The appellee assumed the burden of proving and/or rebutting the prima facie case that any damage done to the hogs was not negligence on its part and made the following proof, which we think is sufficient to support the judgment of the court:

The hogs were watered at Denton, Texas, about 10 the night before; the local train of appellee took possession of the car from the initial carrier at Fort Worth some time that morning and departed about 11 a. m. and delivered it in Irving at 4:52 that afternoon, during which time the bed of the car in which the hogs were in was wet, damp and sloppy but that they were hot when they reached their destination; each of them was able to move around and no dead ones were seen by appellee's conductor. Appellee's local agent at Irving testified that the appellant and his witness Salzer came to his office about 2 o'clock on the day on which the hogs were to arrive and made inquiry about them; that he called Forth Worth and found out they were on their way to Irving and would arrive around 5 o'clock; that he gave this information to them and that they, in his presence, discussed which one would unload the hogs and that Salzer agreed to have his truck there and unload them; that the hogs arrived at 4:52 but that neither appellant nor Salzer appeared; that he was due off his job at 4:30 but that he stayed there until

10:30 that night trying to do something for the hogs; that he arrived thirty minutes earlier on the job next morning, still trying to do something for them; that in the meantime he had sent messengers out over the town trying to locate the two gentlemen and that he finally found out where Salzer lived and sent him word to come after the hogs; that in the meantime he had ordered the section foreman to secure a water hose and water the hogs; that Salzer finally appeared on the scene about 9 o'clock next morning.

Even though appellant and Salzer were busy doing other things, the law would not relieve them from negligence because they had other duties to perform even though such duties were more important than attending to the freight. 13 C.J. S., Carriers, part of § 153 under title, "What constitutes a reasonable time." The syllabi in the case of Chicago, R. I. & G. Ry. Co. v. Pavillard, Tex.Civ.App., 187 S. W. 998, read as follows:

"In an action for damages to a shipment of live stock resulting from the carrier's failure to unload it or to notify the shipper of its arrival so that he might unload it, held, that whether the shipper, in the exercise of ordinary care, should have been present to receive and unload it, was for the jury.

"Where a shipper of live stock was negligent in failing to unload it on arrival so that it was injured, he could not recover for such injury."

Appellant testified that he left appellee's station at about 12 and never returned to see about the hogs but left Salzer there to attend to them. Since the testimony shows that the consignee Salzer was informed the hogs would arrive at about 5 o'clock and instead of returning and unloading them he went on to Dallas to gather up garbage for other hogs he owned and did not stop by at 10 o'clock that night to see about them, nor did he attend to them early next morning but stated he had other things to do, and knowing and realizing that appellee Company had no facilities to take care of the hogs, and knowing that it was hot weather and that hogs were susceptible of dying under heat, especially when closely penned together during the month of August and that they needed much water during hot weather, we overrule the above points of error.

Appellant's point No. 3 complains of the court's submitting Special Issue No. 16 on the question as to whether or not agent of the Company told Charles Salzer about 2 p. m. on August 31, 1945 the shipment of hogs would arrive at Irving, Texas, at or about 5 p. m. of that day. His objection to such issue is on the ground that its submission was on the weight of the evidence. We find that his contention is not well taken, this is a defensive issue that establishes negligence of the appellant and appellee was entitled to have it submitted in the affirmative as was done. The jury could have answered in the negative if they wanted to follow appellant's theory.

Appellant's point No. 4 is as follows: "The Court should not have submitted to the Jury special issue No. 17, on the question of whether or not consignee was negligent in failing to unload the hogs at an earlier time than he actually did."

Appellant objected to the submission of this issue on the ground that it would relieve the appellee of its duty as a common carrier and warehouseman to care for and protect the livestock until consignee had been notified of its arrival and allowed a reasonable time for its removal. We disagree with appellant's contention under the record in this case; see the Pavillard case, supra; 13 C.J.S., supra.

Appellant's point No. 5 is as follows: "The verdict is contrary to the evidence wherein in special issue No. 2, the Jury found that defendant did not fail to water and care for said hogs after arrival at Irving, Texas."

His objection to said point is based on the theory that there is only one explanation for the jury's answer to this issue and that is that they accepted it as a fact that the hogs were delivered when they arrived at Irving, Texas, at 4:52 p. m. and that from that time appellee was relieved of its liability for the care of the

hogs. We think this question became moot when the jury found that appellant was negligent in not unloading or taking care of his hogs and that such failure was a proximate cause of the injury to them. Then too, the jury is presumed to have followed the instructions of the court and therefore considered the term "delivery" as defined by the court, supra; also there is evidence to support the jury's finding.

All assignments being overruled, we affirm the judgment of the trial court.