TEXAS & P. RY. CO. v. MISSOURI IRON & METAL CO.   (No. 8197.)

(Court of Civil Appeals of Texas. Ft. Worth. May 22, 1915.)

1. TRIAL ⬅⟳207—INSTRUCTION—NECESSITY.

In an action by a shipper of goods against a railway for misdelivery to C., alleged by defendant to have been the consignee's partner, where the consignee was the road's only witness to show the partnership, while several witnesses testified to denials by the consignee of the existence of the partnership, in view of the fact that plaintiff offered no direct evidence to show that C. was not in fact a partner, and of such consignee's testimony that he was a partner, rendering the witness liable for the goods, the court should have instructed that the plaintiff's evidence as to the nonexistence of the partnership could be considered only as affecting the credibility of the consignee's testimony, although the jury understood, in a general way, that the testimony was offered only for impeachment from a written agreement to that effect entered into between counsel at the time of its admission.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 498, 499, 501; Dec. Dig. ⬅⟳207.]

2. TRIAL ⬅⟳253—INSTRUCTION EXCLUDING TESTIMONY.

In an action against a carrier of goods for misdelivery, a requested instruction that evidence of the shipper's witnesses to denials by the consignee of the existence of a partnership between the consignee and him who received the delivery could not be considered "for the purpose of deciding whether or not the one receiving delivery was a partner of the consignee doing business under the firm name of D. Company" was not improper, as totally excluding consideration of such testimony, as the jury could only have understood it as an explanation of previous language in the instruction that they should consider the testimony solely for purposes of impeachment of the consignee testifying to the partnership.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613-623; Dec. Dig. ⬅⟳253.]

3. PARTNERSHIP ⬅⟳218—CARRIAGE OF GOODS—MISDELIVERY—QUESTION FOR JURY.

In an action against a carrier for misdelivery, the question whether the person to whom delivery was made was a partner of the consignee held for the jury, under the evidence.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 49, 426-428; Dec. Dig. ⬅⟳218.]

Appeal from Tarrant County Court; Chas. T. Prewitt, Judge.

Action by the Missouri Iron & Metal Company against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded.

Thompson & Barwise and Geo. Thompson, Jr., all of Ft. Worth, for appellant. Slay & Simon, of Ft. Worth, for appellee.

DUNKLIN, J. The Texas & Pacific Railway Company has appealed from a judgment against it in favor of the Missouri Iron & Metal Company for the value of 17 bundles of old automobile tires shipped from Ft. Worth by plaintiff Missouri Iron & Metal Company to Dallas over the Texas & Pacific Railway, and consigned to the Double Strength Relining Company upon an open bill of lading. The property was transported to Dallas and there delivered by the railway company to one R. H. Capperton, who receipted for the same, signing his name as "R. H. Capperton, Manager."

The evidence shows without controversy that S. J. Murray was engaged in the business, under the name of consignee, of manufacturing reliners out of old automobile tires. He testified upon the trial that the Double Strength Relining Company, the consignee named in the bill of lading, was a partnership composed of himself and R. H. Capperton. The evidence further shows that, after Capperton received the shipment, he left the county without accounting to Murray or any one else therefor; that soon after Murray published in a newspaper printed in Dallas a notice that the partnership theretofore existing between him and Capperton and doing business under the firm name of Double Strength Relining Company was dissolved.

The principal defense urged by the railway company consisted of allegations of such partnership between Murray and Capperton and of the fact that the delivery of the property to Capperton, as one of the members of that firm, was a lawful delivery to the consignee designated by the plaintiff when the goods were shipped from Ft. Worth. The plaintiff introduced several witnesses who testified to statements made by Murray after Capperton had received the shipment and left. the county, in effect, that Capperton was not interested in the business as a partner; that he was merely a solicitor for the concern; and that he had no authority from the consignee to receive the shipment.

[1] An assignment of error is addressed to the refusal of a special instruction requested by the defendant that the testimony last referred to could not be considered for any purpose, except as affecting the credibility of the witness Murray. There appears in the record a written agreement between counsel for both parties that, at the time the testimony referred to in the instruction was introduced in evidence, "it was admitted by the court for the sole purpose of impeachment and affecting the credibility of the witness S. J. Murray." Appellee insists that, in view of this showing, the error, if any, in refusing the requested instruction, would not be cause for reversal, since, under the circumstances mentioned, it is not probable that the jury considered it for any purpose, except that for which it was admitted.

The issue of whether or not Capperton was a partner with Murray in the business was a vital one. Murray was the only witness offered by the defendant to establish such partnership, while several witnesses were introduced by the plaintiff who testified as indicated already. Even though it should be presumed that the jury understood in a general way the purpose for which the testimony was admitted, yet in view of the fact that plaintiff offered no direct evidence to show Capperton was not in fact a partner with Murray, and Murray's testimony that Capperton was a partner, thus admitting his liability to the plaintiff for the value of the property, we are of the opinion that the court erred in refusing the requested instruction.

[2] We are also of the opinion that the further language contained in the requested instruction that such testimony could not be considered "for the purpose of deciding whether or not R. H. Capperton was a partner of S. J. Murray, doing business under the firm name of Double Strength Relining Company," is not subject to the criticism suggested by the appellee that it, in effect, would exclude the consideration of such testimony altogether. We believe that the language just quoted could not have been understood by the jury in any other sense than as an explanation of previous language used in the instruction, to the effect that such testimony could be considered solely for the purpose of affecting the credibility of the witness S. J. Murray.

[3] As it was shown without controversy that Capperton received and converted the shipment, as the defendant based its claim upon Capperton's authority from the consignee to receive the shipment solely upon an allegation that he was a member of the partnership firm doing business under the name of the consignee, as the only evidence offered by the appellant to support the allegation of such partnership was the testimony of Murray, and as the testimony of several of the witnesses introduced by the plaintiff tended strongly to discredit Murray as a witness, we overrule appellant's further assignment addressed to the refusal by the court of a requested peremptory instruction in favor of the defendant.

For the error indicated, the judgment is reversed, and the cause remanded.