**TEXAS & P. RY. CO. et al. v. PRUNTY.**
(No. 8341.)

(Court of Civil Appeals of Texas. Fort Worth, March 25, 1916. Rehearing Granted May 14, 1921.)

**1. Appeal and error ⬡231(9)—Objection held not to point out error in charge.**

An objection in trial court that instruction was erroneous "because same is not a correct definition of 'inherent vice,' but is ambiguous, unintelligible, misleading, and confusing in a manner calculated to be prejudicial to defendant," fails to point out any error in the charge, and the appellate court might properly· refuse to consider it.

**2. Carriers ⬡230(7)· — Instruction defining "inherent vice" held not affirmatively erroneous.**

An instruction that "inherent vice" in an animal is some quality or characteristic of the animal that brings about its own injury or destruction, without fault on the part of any other supervening cause, was in the main correct, and no probable error was shown by its submission. ·

[Ed. Note. —For other definitions, see Words and Phrases, Second Series, Inherent Vice.]

**3. Trial ⬡260(1)—No error in refusing requested instruction covered by given charges.**

There was no error in refusing to give a special charge, where other charges were given virtually covering the requested instruction.

**4. Trial ⬡194(20)—Charge as to temporary injury to stock held upon weight of evidence.**

In an action against a carrier to recover for injuries to animals, the court properly refused to instruct as being upon the weight of the evidence, "even if you should think that the railway company negligently handled the stock en route, and thereby caused them to be damaged and depreciated in value upon their arrival at Decatur, yet if you find ,that the injuries and depreciation in value were only temporary, and that the stock recovered from such condition thereafter during the ·time plaintiff kept them, · you will take into consideration such recovery or regaining of value in determining the value of the stock at Decatur."

Conner, C. J., dissenting.

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Wise County Court, J. W. Walker, Judge.

Suit by J. V. Prunty against the Texas & Pacific Railway Company. On appeal by defendant from judgment for plaintiff, questions were certified to the Supreme Court. Judgment of lower court affirmed in conformity with the opinion of the Supreme Court (230 S. W. 396).

McMurray & Gettys, of Decatur, and George Thompson, of Fort Worth, for appellant.

M. W. Burch, of Decatur, and R. F. Spencer, of San Antonio, for appellee.

BUCK, J. This suit was brought by appellee, J. V. Prunty, in the county court of Wise county for the sum of $360, damages alleged to have been occasioned to a shipment of 20 head of mares and horses and 16 head of colts moved from Toyah, Tex., to Decatur, Tex., over the Texas & Pacific and Fort Worth & Denver City Railways, via Fort Worth, said damages being alleged to have occurred in the switchyards at Fort Worth, and both of the railway companies being made parties defendant.

Defendants answered, denying all of plaintiff's allegations, and alleging that plaintiff's said stock consisted of wild-range stock, mostly mares heavy with foal, which condition and wild nature constituted inherent defects; that, there being only one car of said stock, they necessarily had to be transported on a local freight train, which necessarily had to be frequently stopped along the route to take on and leave freight and to pass other trains; and that if any of plaintiff's said stock were injured or damaged, such damage was occasioned by reason of said inherent vice of the animals, and by reason of the ordinary jolts and jars necessarily incident to the movement of a local freight train.

Plaintiff by supplemental petition denied all the allegations in defendants' said answer.

The case was tried before a jury, and resulted in a verdict and judgment for plaintiff in the sum of $287.07 against the defendant Texas & Pacific Railway Company, and denying any recovery against the Fort Worth & Denver City Railway Company. From this judgment the Texas & Pacific Railway Company appeals.

The first six assignments of error complain of the admission, over objection, of certain questions and answers, and involve the same question of law. The first assignment complained that—

"The court erred in permitting plaintiff's counsel to ask him, 'What was the difference, if any, between the reasonable market value of the mares at the time and in the condition in which they did arrive and the condition in which they should have arrived, handled with ordinary care and diligence?' To which plaintiff answered, 'I think it was any where from $20 to $25 difference.' "

The objection made by defendant was that said question and answer called for and involved a conclusion of the witness which he was not qualified to state and concerning a matter properly for the jury and not for the witness, because same involved a mixed question of law and fact, and because there was no allegation to support it, and because it was incompetent, irrelevant, and immaterial. The other questions propounded are very similar to this one, and the objections made thereto were, in substance, the same as here made. We are of the opinion that the assignments should be sustained. As to what constitutes ordinary care and diligence is a question for the jury. H. &. T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808; M., K. & T. Ry. Co. v. Brown, 155 S. W. 979; H. & T. C. Ry. Co. v. Davis, 50 Tex. Civ. App. 74, 109 S. W. 422; G., C. & S. F. Ry. Co. v. Kimble, 49 Tex. Civ. App. 622, 109 S. W. 235; I. & G. N. Ry. Co. v. Hamon, 173 S. W. 613; 17 Cyc. 57, 58; G., C. & S. F. Ry. Co. v. Bogy, 178 S. W. 597. In the case of Railway v. Roberts, supra, the question of error presented was as to the following question, propounded to plaintiff by his counsel, and the answer thereto, to wit:

"From your own knowledge and experience as a cattleman, and from your experience in shipping cattle to the territory and vicinity over these roads, having gone with several shipments over the roads that these cattle were shipped, what is a reasonable time with which to transport a train of cattle from Llano to Fairfax, when they are transported with ordinary care and diligence?"

To this question and any answer that might be made thereto the defendants objected, on the ground that such question was the mere opinion of the witness on a mixed question of law and fact, and that the determination of what was a reasonable time was one for the jury to reach from all the facts. But the court overruling such objection, the witness made the following answer:

" 'I have had to make it in 34 hours, and I was thoroughly satisfied anywhere from 30 to 36 hours' (would be a reasonable time to make the trip). In addition to the objection that the witness could not testify to what was a reasonable time within which to transport said cattle, counsel [in the cited case] urged that it was not permissible for the witness to testify what in his opinion is or is not ordinary care and diligence, and that what is ordinary care and diligence was likewise a mixed question of law and fact, to be determined by the court or jury from all of the facts of the particular case; and to permit a witness to give his opinion thereon would be to submit the determination of the very issue of the case to a witness, instead of to the court or jury."

In answer to certified question from the Court of Appeals for the Third District, the

Supreme Court held that the questions and answers submitted did involve a mixed question of law and fact, citing G., H. & W. Ry. Co. v. Hall, 78 Tex. 170, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42, and further the court said:

"In answering, if he answered intelligently, the witness must have determined for himself what would constitute ordinary care, and then have deduced, from a consideration of all the elements that would, in his opinion, enter into the question of the time reasonably necessary for the transportation in the exercise of such care, a conclusion as to what that time should be. The elements or facts which should be considered were first to be determined in part by the court in the admission and exclusion of evidence; and the conclusion to be drawn from them, as to the time reasonably required to carry the cattle to their destination with ordinary diligence was then to be drawn by the jury by applying to the facts admitted in evidence their own judgment as to what would constitute ordinary diligence and a reasonable time."

In the instant case the witness would have to decide in his own mind what constituted handling with ordinary care and diligence on the part of the railway company, and the condition the horses would have been in if so handled, before he would be able to intelligently answer the question propounded.

The only case cited by the appellee which seems to be in conflict with the cases hereinabove cited is K. C., M. & O. Ry. Co. v. West, 149 S. W. 209, by the Austin Court of Appeals, opinion by Justice Rice. In that case the witness did not answer the question containing the feature objected to in the instant case, and therefore the expression of the opinion by Justice Rice that said question, if it had been answered, would not have been objectionable, is in the nature of obiter dicta. But, be that as it may, we think the question has been definitely and unmistakably decided contrary to the expressions contained in the opinion in the West Case, and we are forced to conclude that the trial court erred in admitting this testimony, and that assignments 1 to 6 inclusive, should be sustained.

We think it doubtful as to whether the witness Hub Dillehay sufficiently qualified to admit the testimony complained of in the seventh assignment. But we do not determine whether or not the question raised in said assignment, if standing alone, would justify a reversal.

[1, 2] The court in his charge gave the following definition, to wit:

"'Inherent vice' in an animal is some quality or characteristic of the animal that brings about its own injury or destruction without fault on the part of any other supervening cause."

The objection made in the trial court and here urged in the eighth assignment is:

"Because same is not a correct definition of 'inherent vice,' but is ambiguous, unintelligible, misleading, and confusing in a manner calculated to be prejudicial to defendant."

We do not think in its assignment appellant points out any error in this charge, and for that reason we might properly refuse to consider it (McGraw v. Railway, 182 S. W. 417), but if we should consider the assignment, while some change might have been advantageously made in the definition given, we think said definition in the main is correct, and that no probable error is shown by its submission.

[3] We do not find any error in the failure of the court to give the special charge requested by defendants, to the exclusion of which error is assigned in the ninth assignment, especially in view of the fact that in addition to the definition of inherent vice given in the main charge the court gave, at the request of plaintiff, special charge No. 2, and at the request of defendant special charges Nos. 1 and 2, covering virtually the same instruction as requested in the refused charge.

[4] In its tenth assignment appellant urges error to the refusal of the court to give the following charge:

"Even if you should find that the Texas & Pacific Railway Company negligently handled the stock en route and thereby caused them to be damaged and depreciated in value upon their arrival at Decatur, yet if you find that the injuries and depreciation in value were only temporary, and that the stock recovered from such condition thereafter during the time plaintiff kept them, you will take into consideration such recovery or regaining of value in determining the value of the stock at Decatur."

We think such charge would have been upon the weight of the evidence. G., C. &. S. F. Ry. Co. v. Stanley, 89 Tex. 44, 33 S. W. 109; M., K. & T. Ry. Co. v. Mulkey & Allen, 159 S. W. 114; P. & N. T. Ry. Co. v. Holmes, 177 S. W. 505; H. & T. C. Ry. Co. v. Lindsey, 175 S. W. 709. In the case of Railway v. Mulkey & Allen, supra, the Dallas Court of Appeals, in an opinion by Justice Rasbury, and in discussing an assignment based upon the refusal to give a similar charge, says:

"The court below correctly charged the jury on the measure of damages, and permitted the broadest kind of inquiry into the condition of the cattle at the time of their shipment, at the time of their arrival, as well as their condition and improvement while being fed and before they were sold. As we understand it, these are inquiries going to prove or disprove the actual damages, and may be, and doubtless were, considered by the jury in the instant case; but we do not understand that proof of such matters is authority for the court to suggest to the jury in his charge that such facts have been proven and may be considered by the jury in estimating the actual loss. Their admission in evidence is the warrant for their consideration, but the court may not seek out that particular fact, and especially direct the

attention of the jury to the fact that that particular testimony may be considered. The rule is that the actual loss is recoverable; and what the actual loss is is a question to be determined by the jury from all the facts taken and considered as a whole, without special reliance on any particular fact or circumstance"—citing Railway v. Word, 51 Tex. Civ. App. 206, 111 S. W. 753.

We need not consider the question raised in the eleventh assignment as to newly discovered evidence, inasmuch as the case has been reversed for the reasons heretofore given, and this question will not be presented in another trial.

Judgment reversed, and the cause remanded as to appellant, but undisturbed as to the Fort Worth & Denver City Railway Company.

CONNER, C. J. (dissenting). In this case the evidence that appellee's horses were delivered to the appellant railway company for transportation in good condition is abundant. It also seems as well established in the evidence that when delivered at their destination they were in a badly injured condition, which was proximately caused by delays and rough handling, chargeable to appellant, and it will be observed in the opinion of the majority that the reversal of the judgment below in appellee's favor is grounded alone upon a single proposition, to wit, that the trial court committed prejudical error in permitting answer to the following question:

"What was the difference, if any, between the reasonable market value of the mares at the time and in the condition in which they did arrive and in the condition in which they should have arrived, handled with ordinary care and diligence?"

To which the plaintiff answered:

"I think it was anywhere from $20 to $25 difference."

The conclusion of the majority that the question and answer were erroneous rests upon the further conclusion that the ruling of our Supreme Court in the case of H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, requires such a holding, but with this latter conclusion the writer most respectfully disagrees. Of the other cases cited by the majority, all of which are predicated upon the Roberts decision, the cases of Railway Co. v. Davis, 50 Tex. Civ. App. 74, 109 S. W. 422, and Railway Co. v. Hamon, 173 S. W. 613, undoubtedly support the majority conclusion, and to these cases may be added T. & P. Ry. Co. v. Jones, 58 Tex. Civ. App. 132, 124 S. W. 194, by this court in which the opinion was written by Mr. Justice Dunklin, and in which also the writer concurred.

Later, however, when the question again came before this court in the case of Railway Co. v. McIntyre & Hampton, 152 S. W. 1105, the writer, upon further consideration, entered his dissent, as will be seen by a reference to that case, and he now again reiterates his dissent to the end that, should the parties so desire, the differences in opinion may be harmonized, and the question authoritatively determined by our Supreme Court. As it seems to the writer, the technical difficulties in the administration of the law are complex at the best, and he does not think they should be multiplied by unnecessary or unwarranted extensions of decided cases, and he has not been able to avoid the conviction that the ruling in the present case, and in the other Courts of Civil Appeals cases supporting it, is not warranted by the decision in the case of Railway Co. v. Roberts. In the Roberts Case, as will be seen by reference to the question which is set out in the majority opinion, the answer required of the witness was what was a "reasonable time within which to transport" the train of cattle between the points named? This of course was the very question upon which the plaintiff's case rested, and which it was necessary for the jury to determine. If the shipment was "unreasonable" under the circumstances the defendant was necessarily guilty of negligence, and the court, therefore, well said that the question and answer were objectionable as involving a mixed question of law and fact, which was for the jury's determination from all of the evidence. The question in the present case, however, and in the other Courts of Civil Appeals decisions referred to, as it seems to the writer, is quite different. Here the plaintiff was offered as an expert on the question of values, his qualification as such is not attacked, and the question propounded to him merely required an answer as to the difference, if any, in values. To that was the question alone addressed and to that alone was the answer as actually given by the witness directed. It is true that in a sense the interrogatory involved the question, in a collateral way, of how the cattle "should have arrived, handled with ordinary care and diligence," but, as stated, the witness was not requested to give his opinion upon that question. That was a question and an issue to which much evidence in the case was addressed, and which by separate clause of the court's charge was distinctly submitted to the jury. As embodied in the question it was purely hypothetical. In other words, for the purpose of the question the witness was asked to state what the value of the cattle would have been if it be assumed that they arrived in the condition they should have arrived, handled with ordinary care and diligence. It is easily inferable that a witness qualified to speak as to the state of the market at the point of destination could properly give his opinion on market values, even though, he, himself, had never made nor accompanied a cattle shipment, or had any knowledge that would enable him to deter-

mine whether a shipment between given points was, or was not, within a reasonable time and with ordinary care. It is well settled in the authorities that counsel may get the opinion of a qualified witness upon a hypothetical question. See 2 Words and Phrases 2d Series, p. 926, citing Order of United Commercial Travelers of America v. Barnes, 75 Kan. 720, 90 Pac. 293. See, also, 17 Cyc. p. 242. In the authority last cited, it is said:

"Assumption of facts in putting a question might almost be regarded as a test of whether a witness is being examined as an expert. The expert, properly so called, is asked what would be his judgment, upon all or any prescribed part of the facts, as to which evidence has been lawfully admitted by the court, assuming that they are true; provided that a sufficient number of facts are assumed to enable the witness to give an intelligent opinion. Having no facts in mind as the result of observation, it is in this way alone that the proper basis for a reasonable judgment can be furnished. The requirement that the question should be in a hypothetical form, stating facts of which there is some evidence in the case, continues throughout the examination of experts, so far as the attempt to elicit affirmative facts is concerned, and applies equally to cross-examination as to direct, to the redirect as to original case, and to experts introduced either by plaintiff or by defendant."

And in 1 Greenleaf on Evidence (15th Ed.) pp. 579, 580, in speaking of instances in which the opinions of witnesses are competent, it is said:

"And such opinions are admissible in evidence, though the witness founds them, not on his own personal observation, but on the case itself, as proved by other witnesses on the trial. But where scientific men are called as witnesses, they cannot give their opinions as to the general merits of the cause, but only their opinions upon the facts proved. And if the facts are doubtful, and remain to be found by the jury, it has been held improper to ask an expert who has heard the evidence what is his opinion upon the case on trial, *though he may be asked his opinion upon a similar case, hypothetically stated.*" (Italics those of the writer.)

In the case of Scalf v. Collin County, 80 Tex. 514, 16 S. W. 314, our Supreme Court in ruling that a witness could give his opinion on an issue of sanity vel non, said, among other things:

"Where the issue is one upon which the witness may properly state his opinion, he may do so notwithstanding his answer embraces the very issue on trial."

In the case of C., R. I. & G. Ry. Co. v. Jones, 118 S. W. 759, by the Court of Civil Appeals for the Sixth District, and in which a writ of error was refused, the following question and answer were objected to as invading the province of the jury, viz.:

"What was the market value of these horses at that time if they had been transported properly, and had arrived there without any unnecessary delay?"

To which the witness answered:

"I think they were worth $100 per head, if they had arrived there in proper condition."

In disposing of the objection the court, among other things, stated:

"Market value is largely a matter of opinion, and it was not error to permit the witness to state his opinion as to the market value of the horses at La Junta had they arrived there in proper condition; it appearing that he was acquainted with the market value at that place of such horses. T. & P. Ry. Co. v. Donovan, 86 Tex. 378, 25 S. W. 10. The answer did not 'invade the province of the jury.' It merely stated the opinion of the witness as to the market value of the horses at La Junta if they had arrived in 'proper condition.' Whether they did arrive there in that condition or not was left, so far as the answer of the witness was concerned, without suggestion one way or the other, to the jury."

In the case of G., C. & S. F. Ry. Co. v. King, 174 S. W. 960, by the Court of Civil Appeals for the Fourth District, it was said, among other things:

"There was no error in permitting the witness to testify as to the market value of the horses in the condition they arrived and what it would have been if they had been delivered in the time and manner they should have been."

The question and answer of the witness in that case is not set out in the opinion, but the statement of the court clearly implies that the opinion of the witness on the question of value was sought upon the contingency assumed that the horses there involved had been delivered "in the time and manner they should have been."

In the case of K. C., M. & O. Ry. Co. v. West, 149 S. W. 206, it was shown, as here, that the plaintiff was an experienced cattleman and familiar with the market value of cattle at the point of destination, and he was asked by his counsel the following question:

"Considering the condition of the cattle when they left Talpa, and the wear and tear incident to their trip of 100 miles, the ordinary wear and tear, the way they are handled with reasonable care, or in the ordinary way, we will say, was there a market for these cattle at Mary Neal and in that section?"

Objection was made to this question:

"On the ground that it assumed that said cattle should have gotten there in good condition, predicating the question on a supposition based on a mixed question of law and fact, for which reason it was improper."

The objection was overruled, and the witness, without answering, was thereupon asked: "What could they have been sold for at

that time?" To which he answered: "Twenty-six dollars a head anyhow." In disposing of the question thus presented, the court said:

"In the first place, it appears that the witness did not answer the question propounded, to which objection was made; but, even if it be so considered, we think the question was proper. It did not call for his opinion upon any mixed question of law and fact, as was done in the case of H. & T. C. Ry. Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, relied upon by counsel for appellant, where the witness was asked, after stating his experience, what, in his opinion, was a reasonable time within which to transport a train of cattle from Llano to Fairfax, when they are transported with ordinary care and diligence. Here it appeared that the witness knew the exact condition of the cattle when they left Talpa. He was merely requested to state whether or not there was a market value for these cattle at Mary Neal, and what said market value would have been, if they had been handled in the usual or ordinary way in transit. (The question assuming that they were handled in the ordinary way, and taking into consideration the wear and tear incident to such a trip.) It seems to us that an experienced cattleman, who had frequently shipped cattle and who knew the condition of the cattle when shipped, and who was shown to have known their market value at destination, ought to be able to give his opinion as to what such market value would be, provided they had been handled with reasonable care or in the ordinary way, and that to allow such an answer would not infringe the rule laid down in the case last above cited."

The authorities last cited, in the judgment of the writer, are opposed to the conclusion of the majority, and present the better view. He, accordingly, as stated, enters his dissent, and gives it as his opinion that the judgment below should be affirmed.

### After Response of Supreme Court to Certified Questions.

BUCK, J. The original opinion in this appeal was rendered March 28, 1916. The majority of the court reversed and remanded the cause as to appellant, but left undisturbed the judgment as to the Ft. Worth & Denver City Railway Company. In the opinion of the majority it was held that there was error in the trial court's action in permitting plaintiff's counsel to ask him:

"What was the difference, if any, between the reasonable market value of the mares at the time and in the condition in which they did arrive and the condition in which they should have arrived, handled with ordinary care and diligence?"

To which plaintiff answered:

"I think it was anywhere from $20 to $25 difference."

The objection made by the defendant was that said question and answer called for and involved a conclusion of the witness which he was not qualified to state, and concerning a matter properly for the jury, and not for the witness, because same involved a mixed question of law and fact, and because there was no allegation to support it, and because it was incompetent, irrelevant, and immaterial. Chief Justice Conner dissented, holding that the question and answer mentioned was not subject to the objections made by the defendant. On motion for rehearing and to certify, we certified to the Supreme Court the question of the admissibility of the following questions and answers:

"(1) What was the difference, if any, between the reasonable market value of the mares at the time and in the condition in which they did arrive and the condition in which they should have arrived, handled with ordinary care and diligence? Answer: I think it was anywhere from twenty to twenty-five dollars difference.

"(2) What was the difference, if any, in the reasonable market value of the colts at the time they arrived, in the condition they were in, and in the condition in which they have arrived, handled with ordinary care and diligence? Answer: There was anywhere from fifteen to twenty dollars difference.

"(3) What would have been their (the two mares) reasonable market value if handled with ordinary care and diligence? Answer: Eighty-five dollars.

"(4) As to the colts, what would they have been worth if they had been handled with ordinary care and delivered in good condition? Answer: Thirty-five dollars.

"(5) What would the 14 mares have been worth upon their arrival here if they had been handled with ordinary care and had been delivered in good condition? Answer: Well, from $65 to $75.

"(6) What was the difference, if any, between the market value of the mares in the condition in which they did arrive and in the condition in which they should have arrived, handled with ordinary care and diligence? Answer: Well, there was a difference, I would judge, from $15 to $25."

On April 20, 1921, the Supreme Court answered the certified questions, and held that they were admissible. See 230 S. W. 396. Hence, in obedience to the opinion of the Supreme Court, we set aside the judgment of the majority reversing and remanding the cause, and here overrule all assignments and affirm the judgment below.