## WOOD v. SOUTHERN CASUALTY CO.
### (No. 1205.)

(Court of Civil Appeals of Texas. Beaumont. March 25, 1925. Rehearing Denied April 8, 1925.)

1. **Insurance ⬅146(2)—Automobile collision policy construed according to parties' evident intent.**

Automobile collision policy must be construed according to parties' evident intent, to be determined from words used, subject-matter of policy, and matters naturally or usually incident thereto.

2. **Insurance ⬅146(3)—Automobile collision policy construed most favorably to insured.**

If words of automobile policy admit of two constructions, construction most favorable to insured will be adopted.

3. **Insurance ⬅424—Contact with banks of rut causing automobile to skid into ditch and overturn held "collision" with "object," within automobile collision policy.**

Where automobile came into contact with banks of rut in highway, causing car to skid into ditch and overturn, *held* that rut was "object" and car came into "collision" with it as well as with sides and bottom of ditch, within automobile collision policy, not excepting collisions with portions of roadbed, in view of recital that it was "complete coverage" form.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Collision; Object.]

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Action by M. J. Wood against the Southern Casualty Company. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

P. D. Renfro, of Beaumont, for appellant.
Howth & O'Fiel, of Beaumont, for appellee.

O'QUINN, J. Suit by appellant against appellee to recover damages to an automobile in the sum of $502. Tried before the court without a jury, and judgment for appellee. The case is before us on an agreed statement of the pleadings and facts. The statement, among other things, shows:

(1) Appellant was the owner of the car insured;

(2) The accident by which the car was damaged occurred in the city of Port Arthur on April 7, 1922, and at the time of the accident Joseph H. Bogel was driving the car with the knowledge and consent of the owner, Wood;

(3) The car was insured by appellee, all premiums had been paid, and the policy was in full force and effect at the time of the accident;

(4) Proof of loss shown by the repair bill in the sum of $502 was duly made, and liability therefor denied by appellee. It was admitted that the amount of damages claimed, as shown by said repair bill, is reasonable, and that appellee is liable for the full sum, if at all liable, under the insurance policy.

(5) Bogel, who was driving the car at the time of the accident, testified by depositions as follows:

"My name is Joseph H. Bogel; residence 56 Audubon boulevard, New Orleans, La., but my permanent home address is Port Arthur, Tex. I am at present located in New Orleans, La., attending the College of Commerce & Business Administration at Tulane University. I was in Port Arthur, Tex., on or about the 7th of April, 1922. I drove a car belonging to Mr. M. J. Wood of Port Arthur, Tex. I had no special permission on that date from Mr. Wood, inasmuch as he was out of town. I had, however, his general permission to use the car at any time I wished to do so, having done so on numerous occasions previously, which he always approved, and on this day had in addition the permission of his brother, Mr. Patrick H. Wood. The car is a Buick roadster, 1922 model, and was practically new. I had an accident on that date while driving the car. The accident happened on West Seventh street, Port Arthur, Tex. They had been grading the road. There was some ruts in the road which had been covered with loose dirt by the grader, which caused me to lose control of the car and caused the car to skid, running into the ditch, thereby causing the car to turn over. I was injured by having my spine dislocated, and was cut on the right hand and arm. The car was damaged; the cowl was smashed; the radiator was smashed; the hood and the two wheels broken off, and the wind shield and wind deflectors broken; the top was damaged, and the steering wheel bro-

ken. I had known how to drive a car about seven years prior to April, 1922. At the time of the accident I was 18 years old."

On cross-interrogatories he testified:

"I have driven all sorts of cars, coupés, sedans, touring cars, trucks, roadsters of Ford cars. I have no recollection of the highway license on the car. I have also driven Vim trucks, Studebaker automobiles, Buicks, Dodges, and Velies. I did not run into a hole in the roadway. They had been grading the street, and there was some loose dirt and shell which covered these ruts, which caused me to lose control of the car, and it skidded into a ditch. The road had been shelled, and they were grading it. I have no recollection of whether or not it was gravel. I can give no special description of the road; they were like all shell roads, which are very rough and need to be graded. I lost control of the car, causing it to turn over into the ditch. The skidding took place after it hit the hole in the road. It first ran into a rut, which caused me to lose control of the car, and then the car skidded into the ditch."

(6) The insurance policy, among other things, contained the following:

"Complete Coverage Form. Southern Casualty Company, Alexandria La. Policy No. B A 100770.

"In consideration of the premium for this policy and of the statements set forth in the schedule of statements, which the assured makes and warrants to be true by the acceptance of this policy, the Southern Casualty Company, hereinafter called the company, does hereby insure the assured, named and described in the schedule of statements herein, for the term therein specified.

"Section 1. Against actual loss or damage to the body, machinery, equipment and extra parts of each automobile described in statement IV of the schedule of statements, to an amount not exceeding the amount therein specified on each automobile, if caused, while this policy is in force, by

"(A) Fire arising from any cause whatever; self-ignition; accidental and external discharge or leakage of water; lightning; earthquake; collapse of buildings; explosion (including rupture of flywheels, but not of tires); perils of transportation while said automobile is being transported in any conveyance by land or water, through the stranding, sinking, collision, burning or derailment of such conveyance, including general average and salvage charges for which the assured is legally liable;

"(B) Theft, robbery, or pilferage, excepting by any person or persons in the assured's household or in the assured's service or employment, whether the theft, robbery or pilferage occur during the hours of such service or employment or not, and excepting also the wrongful conversion or secretion by a mortgagor or vendee in possession under mortgage, conditional sale or lease agreement. In any case other than in case of total loss of the automobile (s) described herein, the theft, robbery or pilferage of tools and repair equipment is not covered.

"(C) Accidental collision with any other automobile, vehicle or object, excluding, however, loss or damage to any tire due to puncture, cut, gash, blow-out or other ordinary tire trouble; and excluding in any event loss or damage to any tire unless caused in an accidental collision which also causes other loss or damage."

(7) The agreement recites:

"There is no question raised as to the manner and form of the pleadings, and the question before this court is whether or not, under the facts proved, the defendant is liable, under the terms of the policy, for the damage to plaintiff's automobile."

The only question for determination is whether there was a "collision" with an "object," within the meaning of clause (C) of the insurance policy set out above. Appellant contends that the coming in contact with the ruts in the street or road, causing the wheels of his car to veer, and causing the driver to lose control of the car, resulting in its overturning and damaging the car as stated, was a "collision" with an "object," within the meaning of said clause in the policy; while the appellee insists that the ruts and surface of the street or road did not constitute an "object" within the meaning of that word as used in the policy.

Clause (C) of the policy reads:

"Accidental collision with any other automobile, vehicle or object, excluding, however, loss or damage to any tire due to puncture, cut, gash, blow-out or other ordinary trouble; and excluding in any event loss or damage to any tire unless caused in an accidental collision which also causes other loss or damage."

What does the word "object" used in this clause of the policy mean? Appellee, in its original brief, insisted that it should be construed under the rule of "ejusdem generis" and held to mean an object within the class of "automobiles" or "vehicles," but in a later brief appellee admits that, in view of the holdings in the cases of Southern Casualty Co. v. Johnson, 24 Ariz. 221, 207 P. 987, and Rouse v. St. Paul Fire & Marine Insurance Company, 203 Mo. App. 603, 219 S. W. 688, cited by appellant in his supplemental brief, the rule of "ejusdem generis" does not apply, but urges its other contention, that the ruts and banks in the street or road did not constitute an "object" such as was contemplated in the policy, and that the wheels of the car coming in contact with said ruts and overturning and coming in contact with the surface of the road or street did not amount to a "collision" within the meaning of the policy.

[1-3] The language in the policy was selected and used by the insurance company to express the terms and conditions upon which the policy was issued. This being true, the rule is well established that the policy will be strictly construed against it, and liberally construed in favor of the in-

sured. If the words used admit of two constructions, that construction will be adopted most favorable to the insured, and, further, the language used must be construed according to the evident intent of the parties to be derived from the words used, the subject-matter to which they relate, and the matters naturally or usually incident thereto. Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060; Ætna Life Ins. Co. v. El Paso Electric Co. (Tex. Civ. App.) 184 S. W. 628; London Fire Ins. Co. v. Davis, 37 Tex. Civ. App. 348, 84 S. W. 260; Missouri State Life Ins. Co. v. Hearne (Tex. Civ. App.) 226 S. W. 789; Security Ins. Co. v. Sellers Motor Co. (Tex. Civ. App.) 235 S. W. 617. What was the intent of the parties when they made this contract of insurance? Appellant owned an automobile, and wished to insure it against loss or damage. Appellee was engaged in selling insurance of the kind appellant desired. Appellant applied to appellee for insurance, the application was accepted, the premium paid, and the policy issued. What kind of policy was it as to the extent of the protection it proposed to give the assured? The heading is "Complete Coverage Form." It purports to protect against (a) fire; (b) theft, robbery, or pilferage, with certain exceptions; and (c) accidental collision with any other automobile, vehicle, or object, excluding only any loss or damage to any tire, unless the damage to the tire was caused in accidental collision, which collision also caused other damage. There is nothing in the policy excepting from its liability damages occasioned by overturns or collision with portions of the roadbed. Doubtless appellant thought when he was buying the policy that it was intended by appellee to be, and was in fact, "complete coverage" from damage other than the damages specially excepted in the policy. Appellee did not write into the policy that it was exempt from liability for damages growing out of such occurrences as are here shown, nor did it say as much to appellant when he was paying his money for "complete coverage" protection held out to him under the policy purchased. So that, if the coming into contact with the rut and banks thereof in the road or street, which admittedly caused the accident resulting in the damages claimed, was a "collision," and the rut was an "object" within the meaning of the contract of insurance, then the judgment must be reversed and here rendered for appellant.

Without entering into an extended discussion of what has been defined and held to be an "object" and a "collision," we will say that we think when the car ran into the rut and came in contact with the banks of same, causing the driver to lose control of the car, and it skidded into an adjacent ditch and turned over, that under the great weight of authority it must be held that the rut was an "object" and that the car collided with same, as well as collided with the sides and bottom of the ditch into which it ran by reason of the "collision" with the rut. Power Motor Car Co. v. United States Fire Ins. Co. (Mont.) 223 P. 112; Columbia Ins. Co. v. Chatterjee, 93 Okl. 249, 219 P. 102; Southern Casualty Co. v. Johnson, 24 Ariz. 221, 207 P. 987; Great American Mut. Indemnity Company v. Jones (Ohio) 144 N. E. 596; Harris v. American Casualty Co., 83 N. J. Law, 641, 85 A. 194, 44 L. R. A. (N. S.) 70, Ann. Cas. 1914B, 846; Rouse v. St. Paul Fire & Marine Ins. Co., 203 Mo. App. 603, 219 S. W. 688; Freiberger v. Globe Indemnity Co., 205 App. Div. 116, 199 N. Y. S. 310; Hanvey v. Ins. Co., 141 Ga. 389, 81 S. E. 206; Casualty Co. v. Stewart, 208 Ala. 377, 94 So. 345, 26 A. L. R. 427.

Power Motor Car Company v. United States Fire Insurance Company, supra, a case strikingly similar to the case at bar in all its phases—the provisions of the insurance policy, the nature of the accident, and the contentions of the parties—was an action by the Motor Car Company against the Insurance Company for damages to an automobile. The policy contained this clause:

"In consideration of an additional premium of $22.00 this policy also covers * * * damage to the automobile * * * by being in accidental collision during the period of insurance with any other automobile, vehicle, or object. * * *"

The facts were that one Howard was driving the automobile on a public highway leading from Winnette to Lewistown. At a point near Lewistown the road was barricaded, and for some distance was not open to public travel, a fact not known to Howard. About 30 feet from the barricade a detour road leading to Lewistown had been laid out across the prairie. About 150 feet from where the detour left the main road, it crossed a wash or ditch 6 feet deep by 15 feet wide, over which a bridge without any "side arms" had been built. The detour road was not graded, but by use had become well defined; the land on both sides being level. Howard did not discover the barricade until he was practically upon it, and, to avoid colliding with it, turned the automobile sharply to the right and off the main highway, proceeding in which course at a point about 20 feet distant from the bridge across the ditch or wash the automobile ran or dropped into the same in an upright position, and by coming in contact with the body and banks of the ditch or wash was wrecked, causing the damage complained of. The banks of the ditch or wash were composed of earth, and both banks were level with the adjoining prairie, and the coming of the car into contact with the body and banks of the ditch was accidental and

without any design or negligence on the part of Howard. Judgment was for plaintiff. The insurance company appealed and urged two propositions: (1) That the body and banks of the ditch were not an "object"; and (2) that the contact of the automobile with the body and banks of the ditch did not constitute a "collision" within the meaning of the policy. 'After quoting definitions of "object" and "collision," the court says:

"In common usage these terms are given a meaning which accords with the above definitions. Applying these definitions to the facts embraced in the agreed statement, it is apparent that the conclusion of the trial court was correct. The bottom and sides of the ditch or wash are surely visible and tangible things, which may be regarded as put in the way of some of the senses. When the plaintiff's automobile came 'in contact with the body and banks of the ditch or wash' with such force as to completely wreck it, there was a meeting and mutual striking of a moving body with stationary ones, which, under all the definitions, constitutes a collision. A contrary holding would do violence to the plain meaning of the language," and affirmed the judgment, citing many authorities.

It will be observed that in the above case the words in the policy, "collision * * * with any other automobile, vehicle or object," are the same as in the instant case, "collision with any other automobile, vehicle or object," and that the damage was caused by coming in contact with a ditch or wash or rut and its banks, causing the car to overturn.

In the case of Harris v. American Casualty Company, supra, the facts were that an automobile in crossing a bridge collided with the guard rails and was thrown into the stream below. While these facts differ from the facts in the instant case, the court, in the course of its decision holding the company liable, by way of illustration used the following language:

"Suppose a person driving an automobile along a road comes to a place where a highway bridge over a chasm had fallen away, and the machine is precipitated to the ground below, can it be said that there could be no recovery under such a policy as is here sued on because the damage to the machine was caused by collision with the flat earth, instead of some upright or perpendicular object on the earth? We think not. To hold that there could be no recovery under such circumstances would be to misconstrue terms of a contract concerning which there is no room for construction, because the meaning is perfectly plain."

In the case of Columbia Insurance Company v. Chatterjee, supra, Chatterjee sued the insurance company to recover damages to an automobile, and had judgment. The facts were that Chatterjee was traveling along the highway, and near a sharp turn in the road discovered an automobile approaching in his direction, and to avoid a collision with the approaching automobile he suddenly turned to his right and collided with an embankment of earth, which caused his automobile to turn over and wreck itself against the embankment. The policy sued on insured against injury resulting from "accidental collision." In holding the insurance company liable under its policy, the court said:

"The policy makes no exception relative to objects, so it became a question as to whether or not the embankment was such an object as might become the subject of 'accidental collision' under the policy. An object may be defined as any tangible thing, visible or capable of discernment by the senses, which offers an impediment or resistance to another object in motion. It is immaterial whether the object collided with be in motion or standing still. The weight of opinion is that water and land are objects within the meaning of the law of accident insurance policies, and an automobile which runs into either or both collides with an object," citing many authorities.

Southern Casualty Company v. Johnson, supra, was a suit on an insurance policy to recover damages to an automobile. Appellant in that case has the same name as the appellant in the instant case, Southern Casualty Company, but we are left to conjecture as to whether it is the same company. However, the terms of the policy in that case and in the instant case are identical, "accidental collision * * * with any other automobile, vehicle or object. * * * " In driving to one side so as to avoid colliding with a passing car, the automobile ran into an earthen embankment along the side of the road, and by reason of the collision with the embankment was overturned, resulting in the damage claimed. The decisive point in the case was whether a "collision" within the meaning of the policy was shown, and the court held that it was, and affirmed the judgment.

In the Great American Mutual Indemnity Company v. Jones, supra, Jones sued the insurance company to recover damages to an automobile, and obtained judgment. The accident occurred while plaintiff was driving his car on a brick-paved road. Just after crossing a bridge, the road curved sharply, which curve, because of darkness, the driver could not see, and he had no knowledge thereof, and in attempting to make the curve the automobile turned over. It was conceded that the automobile upset when the driver "swerved around with the curve," and that as a result of such turning over the automobile came into collision with the paved roadway, which caused the injury to the automobile for which recovery was sought. The policy provided for damages in case of "accidental collision with another object, either moving or stationary." The court stated the controlling question in the case to be: "Was

the forcible contact of the plaintiff's automobile with the paved roadway occasioned in the manner above stated, an 'accidental collision with another object'? " After considering and discussing numerous decisions construing the words "object" and "collision," as found in other similar insurance policies, the court concluded that the accident in question was covered by the policy, and affirmed the judgment.

It should be remembered that the instant case is not to be confounded with other cases where the insurance policy contains substantially the same clause as to "accidental collisions," but makes exceptions of damages occasioned by upsets or collisions with portions of the roadbed or surface. The policy in the instant case contains no such exception, although it does contain exceptions as to loss by theft and damage occasioned to tires by punctures or ordinary tire trouble. We think that if the company, in framing its policies, had intended to exclude damages occasioned by overturns or collisions with portions of the roadbed, it would have written such exceptions into the policy. Furthermore, we think that by its statement in the beginning in the wording of the policy, to wit, "Complete Coverage Form," it meant to convey to its patrons the idea that the policy was meant to and did cover all such damages as occurred by reason of such accidents as are shown in the instant case.

The judgment should be reversed, and the judgment here rendered that should have been rendered below, that appellant recover of appellee the sum of $502, together with all costs in this behalf expended, and it is so ordered.

Reversed and rendered.