UNITED SERVICE AUTOMOBILE ASSOCIATION V. ALFRED HART MILES.

No. 7861. Decided April 15, 1942.
Rehearing overruled May 20, 1942.
(161 S. W., 2d Series, 1048.

*Max H. Weir, Truehart, McMillan & Russell,* all of San Antonio, for plaintiff in error.

The unambiguous provisions of the policy did not protect the goods which were not lost, but were merely put in an unusual place and damaged. Manufacturers Natl. Bank. v. U. S. F. & G. Co., 245 N. Y. 55, 156 N. E. 94; Williams v. Union Central Life Ins. Co., 291 U. S. 180; Mutual Life Ins. Co. v. Simpson, 88 Texas 337.

*Claud J. Carter,* of San Antonio, for defendant in error.

Plaintiff having brought himself clearly within the terms of the policy and the evidence being undisputed that he sustained a loss and damage from misshipment and misplacement of his goods, it was error for the trial court to overrule his motion for an instructed verdict. United Service Auto. Assn. v. Zeller, 135 S. W. (2d) 161; Standard Acc. Insurance Co. v. Cherry, 48 S. W. (2d) 755; Peoples Mut. Life Ins. Assn. v. Cavender, 46 S. W. (2d) 723.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit by Alfred Hart Miles on an insurance policy. A trial court judgment for the defendant, United Service Automobile Association, was reversed by the Court of Civil Appeals, at El Paso, and the cause was remanded for a new trial. 149 S. W. (2d) 233.

The defendant, a reciprocal insurance exchange, issued a policy known as a "Government Service Policy," which was for the benefit of army and navy officers, active or retired, to protect them from loss or damage in the transportation of their household goods and personal effects. Plaintiff, a retired commander of the United States Navy, carried one of these policies, the coverage clause of which is as follows:

" * * This policy insures the subscriber named herein against destruction of or damage to the property described in the insuring clause hereof, arising as a result of fire and/or lightning, and loss arising as a result of the following named hazards of transportation: * * Loss resulting from the loss, misshipment or misplacement of boxes during the shipment and/or loss resulting from the stranding, burning, sinking, collision or derailment of the carrier upon which the insured goods are being transported * *."

On October 11, 1937, three trunks, one box and one crate containing plaintiff's personal effects were received on the U. S. S. Antares, at San Pedro, California, for shipment to Norfolk, Virginia. They were placed in "the first lieutenant's bunk stowage storeroom." On November 2, while the Antares was at Coco Solo, in the Panama Canal zone, excessive rains came and clogged up the "scuppers on the well deck" thereby causing the water to back up into the drain leading into the storeroom containing plaintiff's effects, flooding it to a depth of about eighteen inches and partially suberging the trunks, box and crate. From that time until the same were delivered at Norfolk, on November 24, plaintiff's effects were watersoaked, and were damaged to the amount of $1,569.70. All this is undisputed.

Plaintiff's contention is that the goods were misplaced in shipment in that the usual and proper place for them was what is known as the "cargo holds"; that if they had been put there rather than in the bunk stowage storeroom the storm waters would not have reached them. Plaintiff testified he had had seven years experience on cargo carrying ships like the Antares

and that he had never known of goods like his being put where his were; that the proper place was the cargo holds; that if there was no room there the Antares should have left them on the San Pedro dock for shipment on the next boat having available space in its cargo holds. Charles R. Hoffecker, a lieutenant commander, U. S. N., testified, for the defendant, that he was executive officer in charge of the Antares during the voyage in question; that there was no room in the cargo holds for plaintiff's goods, for which reason they were stored in the bunk stowage storeroom; and that this was the usual and customary disposition to make of them when the cargo holds were full. This state of the record presented an issue of fact as to whether there was a misplacement of the goods, provided the same was such a misplacement, as a matter of law, as is contemplated by the policy. The trial court decided that it was not such a misplacement and instructed a verdict for the defendant. The Court of Civil Appeals held that it was a misplacement within the language of the policy and remanded the cause for a determination of the issue as presented by the testimony of plaintiff and Hoffecker, as above related. That is the sole question for our decision.

The defendant presents the matter in two points of error, as proposition: (1) that loss from misplacement of the goods is not covered when there is no stranding, burning, sinking or collision of the ship on which they are being transported; (2) that loss from misplacement, within the meaning of the policy relates to misplacement in the sense of being lost so that the goods cannot be found and not to damages resulting from putting the goods in an unusual place as a result of which they are not lost but merely damaged.

Pertinent language of the coverage clause is: "This policy insures the subscriber * * against * * loss arising as a result of the following named hazards of transportation: * * loss resulting from the loss, misshipment or misplacement of boxes during the shipment and/or loss resulting from the stranding, burning, sinking, collision or derailment of the carrier * *."

■ Despite the confusion created by the use of the hybrid *and/or* phrase, we think this language cannot be given the construction urged by defendant in its first point. Either the policy insured plaintiff against loss resulting from misplacement *and* loss resulting from the stranding or other specified accident to the carrier, or it insured him against loss resulting from mis-

placement *or* loss resulting from one of the named accidents to the carrier. Consequently there were two wholly unrelated contingencies, against either of which plaintiff's goods were insured. This, we think, is made perfectly clear by repetition of the word *loss* following the phrase *and/or*. Plaintiff was to be indemnified in the event of loss resulting from misplacement as well as loss resulting from some accident to the carrier vessel. When the language of a contract of insurance is unambiguous and is, therefore, susceptible of but one reasonable construction the courts must interpret it as made. I. C. J, sec. 43, p. 417. Hence, we overrule the point.

■ The second point presents the proposition that before plaintiff could be entitled to indemnity under his policy his loss as to the goods would have to arise from their being lost. In other words, the defendant contends that loss from misplacement means that they would have to be so misplaced that they could not be found. If the word *misplacement* is to be defined thus so narrowly, we would have this incongruous language in the policy: "This policy insures * * against *loss* arising as a result of * * *loss resulting* from the *loss* * * or *loss* (misplacement) of boxes during the shipment * *." Such a construction would be unthinkable. It would ignore the rule that, when reasonably possible, meaning must be given to every sentence, clause and word of a contract of insurance so as to avoid rendering portions of it inoperative. 1 Couch on Insurance, sec. 180, p. 367. It would ignore "a settled principle of insurance law, laid down in a host of decisions, that language of a policy which is susceptible of more than one construction should beinterpreted strictly against the insurer and liberally in favor of the insured." 24 Tex. Jur., sec. 29, p. 705, citing twenty-nine Texas cases. It would ignore the fact that the word *loss* is not a word of limited, hard and fast meaning; that, while one may have a loss in his property because it is lost, that is, cannot be found, he may likewise have a loss therein because the same is merely damaged, loss sometimes being synonymous with damage and injury. 38 C. J. p. 244. It would ignore the fact that while *misplace* does mean to mislay, it also signifies to put in a wrong place, Webster's New International Dictionary, 2nd Ed. (1941), and does not necessarily connote that the object cannot be located.

We hold that a reasonable and fair construction of the language of the policy in controversy leads clearly to the conclusion that the policy insured plaintiff against any loss he might

sustain by reason of the goods being put in the wrong place during shipment, that is, any damage he might suffer from their misplacement. It follows that the trial court erred in not submitting to the jury the issue as to whether plaintiff's goods were misplaced when stored in the bunk stowage storeroom of the Antares rather than in the cargo holds, as raised by the testimony of the plaintiff and witness Hoffecker.

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause for a new trial is affirmed.

Opinion adopted by the Supreme Court April 15, 1942.

Rehearing overruled May 20, 1942.