BOARD OF FIREMEN'S RELIEF & RETIREMENT FUND TRUSTEES OF HOUSTON v. MARKS.

No. 9941.

Court of Civil Appeals of Texas. Austin.

Feb. 21, 1951.

Rehearing Denied March 14, 1951.

Retirement Fund Trustees of Houston); further ordered appellant to place appellee upon its rolls as a pensioner entitled to total disability payments of $88.50 (50% of his average monthly wage), and ordered that sum paid to appellee so long as his total disability shall continue.

No findings of fact and conclusions of law were requested, and none were filed.

The parties stipulated: that appellee became a fully paid fireman in the employ of the City of Houston on June 1, 1939, and continued in such employment until November 13, 1944, during which time his average monthly wage was $177 per month; that the City of Houston has met the requirements of art. 6243e, supra, and appellant is a duly constituted Board organized, existing and acting under the terms of that Article; that on October 16, 1940, appellee was accepted as a member of the pension fund of appellant and thereafter was entitled to participate therein under the terms of art. 6243e, supra; that on December 28, 1944, appellee applied for a pension and claimed total disability; that this application was denied on the ground that appellee "* * * had not become physically or mentally disabled while in and/or in consequence of his duty as a fireman," and that appellee appealed to the Pension Commissioner, who entered the following decision:

"Upon examining the records and conducting a hearing for Julius F. Marks' appeal on September 1, 1949, I am unable to find any evidence where his trouble was brought on while performing the duties as a Fireman for the City of Houston, or in the consequence of the performance of his duty as a Fireman.

"In my opinion Mr. Marks is not entitled to disability compensation in the Fireman's Pension Relief System."

The transcript of the evidence heard by the Commissioner was introduced at the trial. It includes appellee's testimony, his application for membership in the Pension Fund, notice of his acceptance as a member, and appellee's notice of intention to appeal from the decision of the Commissioner.

. Will Sears, City Atty., City of Houston, Burton W. Morris, Asst. City Atty. of Houston, Houston, Gaynor Kendall, Austin, for appellant.

Lawrence P. Gwin, Houston, Sneed & Vine, Jerome Sneed, Jr., Austin, for appellee.

GRAY, Justice.

This suit was filed by appellee as a statutory appeal under Section 18 of Article 6243e, Vernon's Ann.Civ. Statutes, appealing from the decision of the Firemen's Pension Commissioner denying him any relief on his claim for a disability pension out of the Firemen's Relief and Retirement Fund of the City of Houston. The trial court, upon a non-jury trial, set aside the decision of the Commissioner; awarded appellee total disability benefits from November 15, 1944, to the date of the judgment, with interest on each monthly installment, ordered the same paid to appellee by appellant (Board of Firemen's Relief and

We find in the record before us three letters: one from Dr. K. N. Miller, dated December 23, 1944, and addressed to "Houston Fire Dept."; one from Dr. Herbert L. Alexander, dated December 22, 1944, and addressed to "Mr. Homer F. Lyles and Fireman's Pension Fund Fire Chief Houston, Fire Dept."; and one from Dr. John M. Filippone, dated December 26, 1944, and addressed "To Whom It May Concern." Each of these letters reported that appellee was suffering from hypertrophic arthritis, and each expressed the opinion that he was not able to carry on the duties of a fireman. No opinion as to the cause of the arthritis is given in either of the letters.

We may assume these letters were before appellant at the hearing of appellee's application for benefits, but, upon objection of appellant's counsel, they were excluded at the hearing before the Commissioner, and for that reason do not constitute a part of "the records" referred to in the order of the Commissioner. Appellee, in his testimony, said that in 1944, appellant told him to get three doctors' reports and that he was examined by their doctors. Other than these offered letters, there was no medical testimony before the Commissioner, and his finding was that he was "* * * unable to find any evidence where his trouble was brought on while performing" or in consequence of the performance of his duties as a fireman.

Appellant's first point and the subpoints thereunder are: that the decision of the Commissioner was in accordance with the statute (Sec. 7 of art. 6243e), was supported by substantial evidence, and was not arbitrary, capricious, or unreasonable; that to be pensionable, a disability must have causal connection with the performance of the duties of a fireman, and that appellee sustains the burden of showing that there was a want of substantial evidence before the Commissioner upon which he could have based his decision.

Section 7 provides: "Whenever a person serving as an active fireman duly enrolled in any regularly active fire department * * * within the provisions of this Act,

shall become physically or mentally disabled while in and/or in consequence of, the performance of his duty, said Board of Trustees may, upon his request, or without such request if it shall deem proper and for the good of the department, retire such person from active service either upon total or partial disability as the case may warrant and shall order that he be paid from such Fund, (a) if for total disability, an amount equal to one-half the average monthly salary of such fireman, not to exceed the sum of One Hundred Dollars ($100) per month; provided that if such average monthly salary be Fifty Dollars ($50) or less per month, or if he be a volunteer fireman with no salary, the amount so ordered paid shall not be less than Twenty-five Dollars ($25) per month; such average monthly salary to be based on the monthly average of his salary for the five (5) year period, or so much thereof as he may have served, preceding the date of such retirement; or, (b) if the disability be less than total, then such sum as in the judgment of the Board of Trustees may be proper and commensurate with the degree of disability; * * *."

In their oral arguments, the parties agreed that appellee is totally disabled to perform the duties of a fireman. They did not agree, however, that appellee's disability was caused by his service as a fireman, and, because appellee is shown to be earning more in his present employment than he earned as a fireman, they did not agree that he is totally disabled within the meaning of "total disability" as used in the statute.

Our interpretation of Sec. 7 is that it provides for the Board to retire a person upon the happening of the following contingencies: (1) when disability is sustained by the person while in the performance of his duties as a fireman; (2) when disability is sustained by the person in consequence of the performance of his duties as a fireman, and (3) when disability results to the person as the result of a combination of (1) and (2). United Service Automobile Ass'n v. Miles, 139 Tex. 138, 161 S.W.2d 1048; 50 Am.Jur., p. 269, Sec. 283.

The word "consequence" is defined in Webster's New International Dictionary, 2nd Edition, to mean: "that which follows something on which it depends; that which is produced by a cause or ensues from any form of necessary connection, or from any set of conditions; a natural or necessary result." In the case of In re Benson, 178 Okl. 299, 62 P.2d 962, 965, the Supreme Court of Oklahoma construed the meaning of a section of the Oklahoma statute, which is similar to Sec. 7 of our statute. That section provided: "that should death result from any injury or sickness, sustained by any such person while in, and in consequence of, the performance of his duty as an employee of such regularly constituted fire department * * *." 11 O.S.1941 § 365. The court said: " 'Cause' and 'consequence' are correlative terms. One implies the other. When an event is followed in natural sequence by a result which it is adapted to produce, or aid in producing, that result is a consequence of the event, and the event is the result of the cause." See, also, Board of Trustees of Firemen's Relief and Pension Fund for City of Tulsa v. Miller, 186 Okl. 586, 99 P.2d 146.

■■ We think the meaning of Sec. 7 is that if a person (qualified under art. 6243e, supra) is injured in the performance of his duty as a fireman and disability (physical or mental) results from, or because of such injury, that such person, upon proof of these facts, becomes entitled to receive the pension benefits therein provided for. Authorities supra; McLaughlin v. Retherford, 207 Ark. 1094, 184 S.W.2d 461. However, we do not believe that the disability must be of such severity as to render the person unable to pursue any gainful occupation, but if total disability is claimed (as here) it must be such as to render the person unable to perform the duties of a fireman. City of Dallas v. Hoskins, Tex.Civ.App., 193 S.W. 2d 533, Er. Ref. N. R. E.

The evidence is undisputed that on December 13, 1944, and at the time of the trial, appellee was suffering from hypertrophic arthritis, that most of his joints were affected, that he was not able to perform the duties of a fireman, and that the "Chief" would not permit him to return to work because he could not get a letter from the "doctor". Appellee has been working for Mount Joy Parts Company, but is not required to do any manual labor, and when he works his average pay is $175 per month.

At the trial appellee testified that at the time he joined the fire department in October 1938, he was assigned to the extra board as a pipeman, and, on June 1, 1939, he was assigned to regular duty as a pipeman. The duties of a pipeman were described by him to be: taking the nozzle of the fire hose and carrying into the fire, or near to it, in order to stop the fire from burning and put it out; this is done by going up or down ladders, stairs, or "anything else", and speed is very important. The hose is connected and the water is turned on by other firemen. Where a hose is required to be used on a fire the pipemen always get wet and are exposed to the weather and to considerable heat from the fire. At the time he went into the service he was in good health, had no symptoms of any sickness, arthritic or rheumatic conditions, and at that time he had both a physical and a blood examination. He played baseball and softball through 1940, when he quit because he needed to be home with his family, and not because of any physical defect. He also fished and hunted. This testimony of appellee is not disputed and we find no evidence of any injury sustained by him other than those testified to by him and sustained while performing his duties as a fireman.

Appellee testified that in 1939, while dragging a hose across a field to a fire, he stumbled over a pile of concrete that was covered with vines, and injured his left knee. This injury was treated by Dr. Petway, who tapped the knee, drew off an accumulation of water, and diagnosed the injury as traumatic arthritis. This injury healed and appellee returned to duty. In the winter of 1941, while fighting a fire, appellee injured his right knee by stepping into a sewer drain. This injury was treated by the city physician and appellee returned

to duty. Later this same year the right knee was injured again while fighting a fire. In 1942, while fighting a fire, he fell down a stairway and injured his left knee. Appellee also testified to other injuries sustained by him to other parts of his body; that he first noticed pains in his left knee in 1943; that the knee grew worse until he was examined by the doctor and he was retired from the service.

At the trial, appellee called Dr. M. E. Petway, who testified by deposition, and appellant called Dr. Walter K. Long, who testified in person. Dr. Long testified that hypertrophic arthritis is synonymous with osteo or degenerative arthritis; "it is called the arthritis of wear and tear because chronic, long continued use or strain on a joint or a set of joints is thought to help bring on this type of arthritis." That it tends to become worse in the joints where it is first observed; it may or may not spread to other joints, that two or three violent strains to the knee would contribute to the production of hypertrophic arthritis in that joint, and that a trauma in the knee might cause osteo in that joint. He said that getting wet and being exposed would not cause hypertrophic arthritis, and that the effects thereof would be temporary, and that a person may have hypertrophic arthritis for several years without it showing any symptoms, and that it would only show by X-ray. There is no evidence of any X-ray being made of appellee prior to the refusal of his application for benefits.

Dr. Petway's testimony is as positive, and even more so, than that given by Dr. Long.

▇▇▇▇. In order for the finding of the Commissioner to be sustained it must be "* * * reasonably supported by substantial evidence, meaning evidence introduced in court." The court determines "as a matter of law the reasonableness of the support afforded by substantial evidence", and "In making its decision of this question the court examines and takes into consideration all of the evidence, the entire record." Hawkins v. Texas Co., 146 Tex. 511, 209 S. W.2d 338, 340. The extent of a judicial review of the order of an administrative agency such as is here before us "* * * limited to an ascertainment of whether there was substantial evidence reasonably sufficient to support the challenged order." Fire Dept. of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664, 666.

The evidence is undisputed that appellee is now, and, at the time he filed an application for a disability pension, was totally disabled from performing the duties of a fireman by reason of hypertrophic arthritis, and that he sustained injuries while performing the duties of a fireman. The expert testimony before the trial court (being all the medical testimony in the record as to the cause) is agreed to the extent that such injuries would contribute to cause hypertrophic arthritis. We, therefore, hold that the decision of the Commissioner is not reasonably supported by substantial evidence.

Appellant says that the power of the trial court was limited to a review of the findings and orders of the administrative agency, and that the court did not have the power to grant appellee a pension for a specific sum.

Appellee testified that after he became disabled, he asked "the doctor" to give him a letter to return to light duty, and the doctor would not do it; that "the Chief" would not put him on duty without such letter, and told him to quit. Before the Commissioner appellee testified: "They required us to turn in the doctor's examination stating that you were able to go back to work." The three letters, supra (Drs. Miller, Alexander and Filippone) were before appellant and each expressed the opinion that appellee was unable to carry on the duties of a fireman, and the parties here agree that appellee is so disabled.

Section 7, supra, provides that when a fireman becomes disabled—the Board may, "upon his request, *or without such request if it shall deem proper and for the good of the department,* retire such person from active service either upon total or partial disability as the case may warrant." (Italics ours.) If the pension is for total disability,

the sum payable is here one-half of the agreed monthly salary of $177. Sec. 7(a), supra.

It is agreed that appellant is totally disabled from performing the duties of a fireman, the record shows he has requested a return to light duty, which request was refused because of his condition, and that he is able to work at his present employment only part of the time.

Pension laws are generally liberally construed in favor of the pensioner. 40 Am.Jur., Pensions, Sec. 4, p. 963.

Under the facts before us we think appellee has shown himself to be totally disabled within the meaning of Sec. 7·of art. 6243e, supra, and entitled to the benefits for total disability therein provided.

The judgment of the trial court is affirmed.

Affirmed.