NATIONAL BANKERS LIFE INS. CO.

v.

HORNBEAK.

No. 3152.

Court of Civil Appeals of Texas.

Waco.

March 11, 1954.

requires the Insured to be confined as a bed patient anywhere in the world, within any recognized hospital (except sanitoriums or Health Resorts) the Company will pay" to the Insured certain items of hospital expense incurred by her as therein specified. On December 20, 1951, the Insured suffered an acute cerebral hemorrhage and upon instructions from her family physician she was placed in Oak Lawn Hospital at Dallas where she was confined continuously thereafter as a bed patient until the time of her death on August 30, 1952. During that interval of time she incurred certain items of expense with Oak Lawn Hospital. After the death of the Insured, appellee qualified as independent executrix of the estate of the deceased and made demand upon appellant for the payment of the benefits alleged to be due and payable under the policy. Appellant denied liability on the ground that Oak Lawn Hospital was not a "recognized hospital" within the meaning of the policy and hence this suit.

The case was tried without a jury and resulted in judgment for appellee in the sum of $1612.42 as indemnity for hospital expenses, $193.49 as statutory penalty and $500 as an attorney's fee. At the request of appellant the trial judge filed findings of fact and conclusions of law, appellant excepted to the same and has duly perfected its appeal so that the cause is now properly pending in this court for review.

The sole question presented on the appeal is whether the trial court erred in finding and concluding that Oak Lawn Hospital was a "recognized hospital" within the purview and meaning of the policy sued upon. If so, the judgment appealed from should be reversed and judgment should be here rendered that appellee take nothing; otherwise, the judgment should be affirmed.

Appellant contends in effect that Oak Lawn Hospital was not a "recognized hospital" within the meaning of its policy because the evidence shows it did not provide for its patients "the standard, ordinary and generally recognized facilities offered by hospitals, such as operating room, facilities to make X-ray photographs, laborato-

Leachman, Matthews & Gardere, J. Carlisle DeHay, Jr., Dallas, for appellant.

Stuart B. Lumpkins, Waxahachie, for appellee.

HALE, Justice.

On August 24, 1950, appellant issued to Martha Ann Hornbeak, who was then 84 years of age, its policy of hospitalization insurance, whereby it insured her against financial loss resulting from accidental bodily injury and sickness, subject to the provisions and limitations therein contained. The policy provided that "if such sickness

ry services and iron lung facilities"; that it only provided for its patients. "room and board and general nursing care, hospital beds with side rails, a registered nurse on duty, hospital records in the form of charts, and equipment to give blood transfusions"; and that such institution was in fact and in law only a convalescent home and not a hospital. We cannot agree with appellant's contentions.

It has long been well settled in this state that since policies of insurance are written by the insurer they should be liberally construed in favor of the insured. 24 Tex.Jur. p. 705, § 29; Providence Washington Ins. Co. v. Proffitt, Tex.Sup., 239 S. W.2d 379; United Services Automobile Ass'n v. Miles, 139 Tex. 138, 161 S.W.2d 1048; Wood v. Southern Casualty Co., Tex. Civ.App., error dismissed, 270 S.W. 1055. Furthermore, exceptions to coverage and limitations upon liability under policies should be strictly construed against the insurer. 24 Tex.Jur. p. 704, § 28; American Fidelity & Casualty Co., Inc. v. Williams, Tex.Civ.App. (error refused) 34 S.W.2d 396; Norwood v. Washington Fidelity Nat. Ins. Co., Tex.Civ.App., 16 S.W.2d 842.

Appellant did not see fit to define "hospital" or "recognized hospital" in its policy or to except convalescent hospitals from the various types of institutions that could properly be classified as hospitals within the broadest meaning of that term. Webster's New Twentieth Century Dictionary (1951 Ed.) defines "hospital" as follows: "1. An institution for the reception of the sick or injured; also an institution or asylum for the reception of the insane, the aged or infirm, the disabled or paupers, etc.; originally any place of refuge for the helpless; as an army hospital; a county hospital; a detention hospital. 2. The building or buildings of such an institution." By Ordinance of the City of Dallas a "hospital" is defined to mean "any institution or place used for the harboring or the reception, care and treatment (including treatment known as rest cures, physical culture, hydropathic massage and all other forms of drugless treatment) of two or more persons suffering

from or afflicted with any mental or physical disease, bodily injury, alcoholic or drug addiction; or any institution or place for the reception or care temporarily or continuously of one or more women during pregnancy, while awaiting confinement, during confinement, or for one month or less after confinement while recovering therefrom; or any place or establishment advertised, announced, conducted or maintained under the name of 'hospital' without a qualifying statement that such hospital is not intended for human beings."

The undisputed evidence in this case shows that Oak Lawn Hospital was at all times material to this suit a "hospital" as defined in the above quotations from Webster's Dictionary and the Ordinances of the City of Dallas. It was housed in a two-story brick building located at the intersection of Lemmon Ave. with Wycliff St., the building fronting on Lemmon Ave. and bearing street number 4238. Across the front of the building was a large neon sign carrying the name "Oak Lawn Hospital." The building was equipped with 46 hospital beds. The institution maintained three registered nurses and several practical nurses in its employ, provided general nursing care for its patients and charts for the use of its nurses in preserving a record of the temperature, pulse rate, medication and treatment of each patient as taken and administered by the nurses under the direction of the patient's attending physician. No person was admitted as a patient except upon the recommendation of his or her attending physician and no physician was recognized unless he or she was duly licensed to practice medicine in this state. A permit to conduct Oak Lawn Hospital at 4238 Lemmon Ave. during the year ending December 31, 1952 was duly issued to the owner thereof by the Director of Public Health of the City of Dallas.

The family physician of the insured testified in detail as to the many different types or classifications of hospitals that are operating throughout the United States and the various facilities offered by each type for the treatment of the sick or injured,

such facilities being dependent upon the nature of the illness, disease or injury to be treated in each specialized type of hospital. The owner of Oak Lawn Hospital also testified to facts showing the type of hospital she operated, the facilities offered, and the services rendered to her patrons in general and to the insured in particular while the latter was a patient in the institution. According to her testimony Oak Lawn Hospital was held out to and recognized by the public and the medical profession in Dallas as a hospital. It was widely advertised in the Dallas News, the Dallas Times-Herald, the yellow pages of the Dallas Telephone Directory, and in medical journals as a hospital.

■ Although Oak Lawn Hospital was not a large institution and did not provide the extensive facilities that are usually found in what is commonly known as a "general hospital," such as operating rooms, X-ray machines, iron lungs, etc., we think the evidence was such as to warrant, if not to require, the trial court to find as a fact that it was a hospital of some kind or character as the word "hospital" is generally understood and defined and as it was used in the contract sued upon. We find no evidence showing or tending to show that any complaint was ever made to anyone as to the manner in which the institution was being conducted or that any interested person other than the representatives of appellant ever failed or refused to accord due recognition to it as a hospital.

■■ In our opinion the expression "any recognized hospital" was intended to mean, and as used in the policy contract does mean, any institution of reasonably good local repute which lawfully and openly maintains and operates any place for the proper care and treatment of sick or injured persons, regardless of how large or small such institution may be or the type of hospitalization it may be equipped to furnish. If it may be said that the language of the policy, which was selected by the insurer, is ambiguous or of uncertain meaning by reason of the use of the words "any recognized hospital," such expression is at least fairly susceptible of the construction we have given it and that construction should be adopted because it is favorable to the insured. McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679, pt. 5; Davis v. National Casualty Co., 142 Tex. 29, 175 S.W.2d 957; Providence Washington Ins. Co. v. Proffitt, Tex.Sup., 239 S. W.2d 379.

Having concluded that the trial court did not err in holding Oak Lawn Hospital to be a recognized hospital within the meaning of the policy in dispute, the judgment appealed from is affirmed.