**EMPLOYERS CASUALTY COMPANY,**
Appellant,

v.

**Herbert E. HOLM, Appellee.**

No. 14602.

Court of Civil Appeals of Texas.

Houston.

July 8, 1965.

Fulbright, Crooker, Freeman, Bates & Jaworski, William H. Payne, Charles Boston, Houston, for appellant.

William R. Powell, Foreman, Dyess, Prewett, Henderson & Cantey, Houston, of counsel, for appellee.

WERLEIN, Justice.

Appellee, Herbert E. Holm, brought this suit against Employers Casualty Company to recover for damage to his home under a policy which insured appellee against "all risks of physical loss" to his home except as excluded in that part of the policy pertinent hereto providing that the insurance shall not cover, among other things:

"i. Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould or fungi; dampness of atmosphere, extremes of temperature; contamination; vermin, termites, moths or other insects;

"k. Loss under coverage A caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, * * *"

"* * * and Exclusions i, j and k shall not apply to ensuing loss caused by * * * water damage * * * provided such losses would otherwise be covered under this policy."

The case was submitted to the trial court on a stipulation of facts which was adopted by the court. The court entered judgment for appellee based on the stipulation of the parties and certain conclusions of law to the effect that all items of loss sued for

were covered by the insurance policy in question. It was stipulated among other things:

## "III.

"The house insured by the policy in question, at 8833 Chatsworth Drive, Houston, Texas, was constructed without a shower pan under the shower stall.

## "IV.

"Neither the insurer nor the insured knew at the time the contract of insurance was made that there was no shower pan beneath the shower floor.

## "V.

"The construction and installation of the tile shower floor and drain pipe in the insured's house was inherently defective in that it was inevitable that without the intervention of any fortuitous or chance occurrences, water would pass through the floor and/or drain into and onto the cement base on which the tile floor was laid. This, in fact, is what occurred in the insured's house.

## "VI.

"The absence of the shower pan made it inevitable that the water which passed into and onto the cement below the shower would pass laterally into and under the wood and cork flooring of the assured's house. This, in fact, is what occurred in the insured's house.

## "VII.

"The water passing into and under the wood flooring of the insured's house caused same to rot and deteriorate to the point where good judgment dictated its replacement.

## "VIII.

"Had a shower pan been installed in the insured's shower stall, the damage to the surrounding floor of insured probably would not have occurred.

## "IX.

"The sum of $180.00 was the sum expended for the plumbing work involved in tearing out the tile floor, breaking into the concrete slab on which the house was built for the purpose of installing a new lead waste line, and installing a lead shower pan and in looking for the cause of the leak. The actual cost of the pan is not claimed in this action and is not included in the $180.00 figure. This plumbing operation was directed solely at finding the cause of the leak and at stopping the passage of water into surrounding floor. If this expense is found to be covered by the policy in question, the amount thereof is not an issue.

## "X.

"The sum of $165.00 was expended by the insured in having the tile torn out by the plumber replaced. If this expense is found to be covered by the policy in question, the amount thereof is not an issue.

## "XI.

"The sum of $355.00 is the amount which will be required to replace the damaged floor. If this expense is found to be covered by the policy in question, the amount thereof is not an issue."

The loss resulted from the construction of the shower stall without a shower pan. This constituted an inherent defect unknown to either party but one which would and did inevitably cause water to pass laterally into and under the wood and cork flooring of the insured's house thereby causing the same to rot and deteriorate to

the point where the damaged floor had to be replaced at an expense of $355.00. The policy excludes loss caused by inherent vice, deterioration and rot as shown in exclusion "i." supra, so that there can be no recovery by appellee unless the loss comes within the exception to the exclusion. The exception is that exclusion "i." shall not apply to ensuing loss caused by water damage—provided such loss would otherwise be covered under the policy.

In McKool v. Reliance Insurance Company, Tex.Civ.App., 1965, 386 S.W.2d 344, dism., the loss was due to chipping and cracking of ceramic tile affixed to the walls of a swimming pool caused by freezing of water in the pool. The policy contained the same pertinent provisions as the policy in the instant case. The insured contended that the damage was caused by ice which is solidified water, and therefore caused by "water damage", thus making inapplicable the exclusions of loss by "extremes of temperature" and by "cracking." The court held that the tile having cracked because of the extreme cold or ice, there could be no recovery therefor, but if water had entered through the cracks thus caused, the ensuing losses (meaning losses which follow or come afterwards as a consequence) caused by the entry of water would be recoverable, since that would be loss caused by water damage ensuing after the uninsured cracking of the tile. The judgment of the trial court denying recovery was affirmed.

In Aetna Casualty & Surety Co. v. Yates, 5 Cir. 1965, 344 F.2d 939, the plaintiffs discovered that the joists, sills and subflooring of their home were almost completely rotted away due to the fact that the "crawl space" under the house was inadequately supplied with vents. Contact between air trapped in the crawl space and subfloors and sills which had been chilled by air conditioning, produced condensation of moisture and consequent rotting. The court in ordering the complaint dismissed said that the rot may have ensued from water but not from water damage, and the damage ensuing from the rot was not the damage from the direct intrusion of water conveyed by the phrase "water damage."

The instant case is distinguishable from the McKool and Yates cases cited by appellant. The parties in the present case stipulated that the water passing into and under the wood flooring of appellee's house caused same to rot and deteriorate. It is a matter of common knowledge that the more or less continual application of water to and against the wooden flooring of a house would cause warping and cracks and water damage thereto which finally would result in rot and deterioration. The loss which ensued or followed the water damage grew out of and was caused by water damage. Hence the exception or exclusion to the exclusion (i) should apply. The water damage in this case would be covered by the policy since it is not within exclusion (d) which excludes certain other kinds of water damage. It thus comes within the proviso in the exception to the exclusion in that the water damage loss would otherwise be covered under the policy. See Sabella v. Wisler, 1963, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889.

Appellant contends that the loss was caused by inherent vice which constitutes an exclusion under (i). The parties stipulated that the construction and installation of the tile shower and drain pipe in the house was defective. The inherent vice was in the shower stall. No recovery was allowed by the trial court for the cost of the shower pan which was installed. Recovery was allowed for replacing the damaged floor. No contention is made that there was any inherent vice in the floor which suffered water damage. It is true that the parties stipulated that the inherent defect in the shower made it inevitable that water would pass into and onto the cement below the shower and into and onto the wood and cork flooring of the assured's house. But the loss was not caused by inherent vice in the floor but by inherent vice in another part of the house for which no recovery was

allowed. For example, if it be assumed that there was an inherent vice in the roof of the house, no recovery could be had for such defective roof or the repair thereof. If, however, water should leak through such roof and damage the floor of the house and the insured's furniture, there could be recovery therefor because there would be water damage not excluded by provision (d). The term "inherent vice" as a cause of loss not covered by the policy, does not relate to an extraneous cause but to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction. The vice must be inherent in the property for which recovery is sought. Mayeri v. Glens Falls Ins. Co., Sup., 85 N.Y.S.2d 370; see Texas & P. Ry. Co. v. Prunty, Tex.Civ.App., 233 S.W. 625; Richards on the Law of Insurance, Fifth Edition, 1952, Vol. 2, p. 721, Sec. 212.

The parties stipulated that the plumbing operation for which the court allowed $180.00 "was directed solely at finding the cause of the leak and at stopping the passage of water into surrounding floor." It is our view that this item of damage as well as the item of $165.00 expended by the insured in having replaced the tile that was torn out, are recoverable as damages necessarily incident to the restoration of the floor and to protect the property from further damage as required by the insurance policy. It was certainly necessary to discover where the water was coming from in order to correct the water damage and to prevent a recurrence thereof. Teeples v. Tolson, D.C.1962, 207 F.Supp. 212.

The trial court in its conclusions of law concluded that the policy in question covers all risks of physical loss except as specifically excluded; that the loss resulting from water damage is a risk of physical loss not otherwise excluded by the terms of the policy; that the rot and deterioration of appellee's wood flooring resulted from water leakage and exclusion (i) under perils insured against, does not bar the recovery because the policy further provides that exclusion (i) shall not apply to water dam-

age; and that the loss involved in this suit may have been an inevitable occurrence rather than a fortuitous event did not remove it from the risk insured against because neither party, at the time the insurance contract was executed, had certain knowledge that this damage was inevitable.

■ It is our view that the judgment of the trial court should be affirmed. We are not unmindful of the fact that the court in McKool v. Reliance Insurance Company, supra, held that the foregoing provisions of the policy are not ambiguous. They appear to be sufficiently clear in their application to the facts of the McKool case. We are of the opinion, however, that as applicable to the facts of the instant case, such provisions are obscure and ambiguous, or at least susceptible to more than one construction, and that they should, therefore, be construed liberally in favor of the insured and strictly against the insurer. United Service Automobile Ass'n v. Miles, 139 Tex. 138, 161 S.W.2d 1048; Wood v. Southern Casualty Co., Tex.Civ.App., 270 S.W. 1055, writ dism. The effect of a "comprehensive" policy is generally to broaden the coverage. The expression in the policy in question, "all risks of physical loss" except those excluded, covers an almost unlimited field. Exceptions and words of limitation are construed against the insurer. The courts will not write a limitation into a policy where none exists. Millers Mutual Fire Insurance Co. v. Murrell, Tex.Civ.App., 362 S.W.2d 868, writ ref., n.r.e. Providence Washington Ins. Co. v. Proffitt, 1951, 150 Tex. 207, 239 S.W.2d 379.

■ In the Murrell case the insurance company argued that it was certain from the day the house was built that the damage in question would happen and hence the risk was not fortuitous but was inevitable, and therefore no "risk" as that term is commonly understood, existed. The court did not agree. The same argument is made in the instant case by appellant. We also do not agree. It is true that when the cause of damage to the floor was finally discovered,

it then became apparent that the initial defect was such that water would inevitably pass through the floor and/or drain into and onto the cement base of the shower stall and pass laterally into and under the wood and cork flooring of the assured's house. The parties stipulated, however, that neither the insurer nor the insured knew at the time the contract of insurance was made that there was no shower pan beneath the shower floor. Under these circumstances we are of the opinion that the damage was not inevitable in the sense that the peril was not a risk but a certainty that could not be insured against. Furthermore, the policy does not exclude damage because it was not fortuitous but inevitable.

In one sense, the damage was fortuitous since neither party knew or contemplated that there was any defect of any kind in the shower stall or that any damage would result therefrom to the flooring of appellee's house. So far as the parties were aware at the time the policy was issued any loss such as that sued for herein, would be dependent upon chance. We quote from Restatement of the Law, Contracts, Sec. 291 "a" as follows: "A fortuitous event within the meaning of the present and subsequent Sections is an event which so far as the parties to the contract are aware, is dependent on chance. * * * ; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties." In Aetna Casualty & Surety Co. v. Yates, supra, the court denied recovery under the facts of the case, but said that if water coming from a burst pipe flooded the house and in turn caused rust or rot, such rust or rot so caused would be a loss ensuing on water damage. We would agree with the court even though the pipe which burst was so rusty and defective when installed that it was inevitable that the pipe would burst when water was turned into the pipe, provided the parties to the insurance contract were not aware of its defective condition when the policy was issued. We see no valid distinction between the case of a defective pipe that will burst and flood the house and a defective shower stall that will repeatedly flood part of the house. In either case the event would be fortuitous as to the parties to the contract who had no conception that any such event would occur when they entered into the contract of insurance.

Judgment affirmed.

COLEMAN, Justice (dissenting).

The policy insures against all risks of physical loss with certain exceptions including loss caused by inherent vice. That part of the loss, resulting from water damage, ensuing from the inherent vice, is covered, provided such part of the loss would otherwise be covered under the policy. The first question to be determined is the meaning of "ensuing loss * * * caused by water damage." The "ensuing loss" involved here is the cost of repair of the shower stall, to prevent further damage, and the cost of replacing the damaged floor covering, and rotten wood flooring. This is an ensuing loss caused by water. This type of water damage is not within exclusion "d" dealing with water damage caused by such risks as wind driven rain or flooding. Since the insurer has specifically excepted loss caused by rot, inherent vice or bulging of floors, except ensuing loss caused by water damage, this loss is clearly covered if it is a "loss otherwise covered." It is "otherwise covered" if it is a "risk of physical loss."

In Black's Law Dictionary, 4th Edition, the word "risk", as used in insurance law, is defined: "the danger or hazard of a loss of the property insured; the casualty contemplated in a contract of insurance; the degree of hazard; a specified contingency or peril; * * *"

Logically an insurance policy insuring against "all risks of physical loss" contemplates all "casualties." Casualty is defined in Black, supra, as: "Accident; event due to sudden unexpected or unusual cause; event not to be foreseen or guarded against;

inevitable accident; misfortune or mishap; that which comes by chance or without design. * * *"

Most of these definitions involve some element of chance. Loss caused by an inherent defect does not. If loss caused by water damage resulting from a defective shower stall is covered, then loss caused by water damage resulting from an improperly installed roof would likewise be covered.

While I recognize that where an insurance policy is subject to more than one construction, that construction most favorable to the insured will be adopted. In this case it is my opinion that a reasonable construction of the policy would exclude liability on part of the insurer for any loss which will surely be sustained by reason of an inherent defect in the house insured.

I respectfully dissent.